## PAUL R. BALDY *v.* FRANCES STRATTON.

1. In an action for breach of promise of marriage, the circumstances attending the breach, before, at the time, and after, may be given in evidence in aggravation of damages.

2. Actions of this kind are not governed by the same rules of evidence that are applied to all other contracts—hence evidence of a proposition from the defendant, after the breach of promise, to procure a false certificate of marriage, though the plaintiff and he were not to be married; evidence of his insolent language and conduct towards a relative of the plaintiff in relation to the damages in this action; and evidence of unnecessary exposure of the plaintiff's infamy,—are admissible.

3. Though seduction cannot be given in evidence in this action, the improper conduct of the defendant, in which the plaintiff did not participate, may be so given in aggravation of damages.

4. A promise of marriage, on condition of illicit intercourse, is virtually void.

5. A plaintiff's statement in writing, addressed to the defendant, of the promise made by him to her, does not conclude the plaintiff, nor prevent her from resorting to other evidence to establish her right to recover.

WRIT of error to the Common Pleas of Columbia.

*July* 11. This was an action on the case for breach of promise of marriage, in which Fanny Stratton was the plaintiff, and Paul R. Baldy was the defendant. Among other evidence adduced by the plaintiff to support her action, was the following :—

Chester Stratton testified, that at the request of the plaintiff, he called on the defendant, and among other things, asked him what amends he was willing to make for the gross violation of decency he had committed; to which the defendant replied, that he was willing to take the plaintiff to a justice in Roaring Creek, and he would there get a certificate that they were married, though they were not to be married; and this would screen her from degradation. This answer was admitted, under the defendant's exception, and constituted his first bill of exceptions to the evidence. It was objected to as not enhancing the magnitude of the plaintiff's loss,

and as not being within the principle of Weaver *v.* Bachert, 2 Barr, 80, the contract being already broken.

Owen D. Leib, another witness for the plaintiff, and her brother-in-law, being asked what was the life and position in society of the plaintiff, from the time she became a member of his family till suit brought, the defendant objected to the witness answering that part of the question which covered the time since the alleged breach of promise; but the court overruling the objection, the admission of the answer constituted the defendant's third bill of exceptions to the evidence.

Plaintiff then offered to prove declarations of the defendant, to the same witness, relative to the damages in this suit, to the admission of which the defendant objected; but the court overruling his objection, the admission of the answer constituted his fourth bill of exceptions to the evidence. The witness then testified, that the defendant hallooed to him on the streets on several occasions, "five thousand dollars damages"—"will five thousand dollars damages do?" This was on the streets, and once or twice he hallooed to me from his father's house, while I was standing near my own house. On another occasion, when I was in company with Benjamin Frick, he said, "Ben! do you think you could stand five thousand dollars damages?"

The defendant gave in evidence the following paper, having laid the necessary ground for its introduction. It is the paper referred to in the charge of the court as being marked A.

"I will swear, Paul, with my dying breath, that you promised to marry if anything happened, and I told you you would not. You said, 'I call God to witness I will, if anything happens.' And I can bring forward another person that you told them the same, and solemnly promised before all this happened.

(Signed) "FANNY."

This paper was directed to the defendant.

The defendant submitted several points to the court, the answers to the first and third of which were assigned for error here.

1st point. That the paper marked A is to be construed by the court, and that the construction of it is a promise made on condition she would permit the defendant to have illicit connexion with her. In answer to this, the court referred to their charge.

3d point. That the plaintiff having stated in writing to the defendant the promise made to her by him, as contained in paper marked A, she is bound by that, and cannot resort to inferior evi-

dence to establish her claim. The court refused to give the instruction requested, and said that, although the plaintiff's statement in writing to the defendant, of the promise made by him to her, is to be considered by the jury as stated in the charge, yet this statement does not conclude the plaintiff, nor prevent her from resorting to other evidence to establish her right to recover in this action.

The court below (ANTHONY, President) charged the jury in these words :—

" It is truly said by some learned judges, that a breach of promise of marriage is a meritorious cause of action; and although the value of a marriage in money may have some influence, there is no doubt that the loss sustained in other respects—the wounded spirit, the unmerited disgrace, and the probable solitude which would be the consequence of desertion after a long courtship, are considered to be legitimate claims for pecuniary compensation.

" A mutual or reciprocal engagement of the parties is necessary to support this action, but it is not absolutely necessary that there should be direct evidence of an express promise to marry. The contract may be evidenced by the unequivocal conduct of the parties, and by a general, definite, and reciprocal understanding between them, their friends and relatives, evinced and corroborated by their actions, that a marriage was to take place; and where the jury are satisfied that the promise of a man is proved in an action by the woman against him, if she so demean herself, and her conduct and behaviour and declarations satisfy the jury, that she concurred in and approved of his promise, this would be sufficient to authorize you to find that her promise, as well as his, is sufficiently established.

" Evidence to support an action for a breach of promise of marriage, is either direct or circumstantial. In the former case, the promise may be proved by the testimony of witnesses who heard the promise given, or there may be written evidence of the fact. So, also, the promise may be proved by circumstantial evidence, and if such facts and circumstances are proved, to satisfy the jury that a promise to marry did actually take place, then the promise will be taken to have been made, as much as if it had been established by direct and immediate proof.

" In order to arrive at the fact whether a promise of marriage existed between the plaintiff and defendant, it is necessary for the jury to take into consideration the situation of the parties, the length of time that the defendant paid attention to the plaintiff as

her suitor, and the numerous gifts or presents which were made by the defendant from time to time; although these will not constitute a promise of marriage, yet you will consider these facts in connexion with the testimony in relation to the promise and declarations of the defendant, in order to determine whether a promise of marriage actually passed between the parties."

The learned judge then read the plaintiff's evidence, which bore upon the alleged promise of marriage. He then passed on to the paper marked A, on which he commented in the following manner:

"This paper was delivered to the defendant, in the fall of 1846, perhaps a year ago. By this paper, the plaintiff refers to a promise which she alleges that Paul made to her if anything happened. What that thing which should happen was, is a matter of fact for the jury to determine from all the evidence in the cause.

"Dr. Leib says that, in the fall of 1846, her situation was notorious and manifest. Did, or did not this 'promise to marry if anything happened,' relate to the illicit connexion which preceded her pregnancy? If the jury are of opinion such was the fact, then so far as the promise was made on condition of illicit intercourse, it would not be binding on the defendant. But there is another clause in the paper which says:—'And you solemnly promised before all this happened.' Before all what happened? It is a fact for the jury to ascertain, what this declaration of the plaintiff's, 'You solemnly promised before all this happened' refers to. She first says that ' "you did promise to marry if anything happened." I told you you would not. You said, 'I call God to witness I will, if anything happens." ' Does or does not this declaration which she made in conclusion, relate to the promise by Paul to the plaintiff, before the illicit connexion commenced between the parties? If the jury believe that she spoke of a solemn promise which the defendant made to her, by virtue of which he obtained her consent to a criminal intercourse, then such promise would not be binding on the defendant. But if, on the other hand, the jury are of opinion that she referred to a solemn promise made by the defendant to her, before any illicit connexion had or to be had between the parties, then such solemn promise would be obligatory on the defendant if acceded to by the plaintiff.

"If the jury, under all the facts and circumstances given in evidence, should believe that the promise as stated in writing, in the paper signed by the plaintiff, was made on condition of illicit intercourse, and therefore not binding on the defendant,—yet the jury are not precluded by this paper, signed by the plaintiff, from find-

ing that a promise of marriage was made by the parties, if the other evidence in the cause will warrant you in so doing. You have heard the testimony of the witnesses on this point, and we leave it for your decision.

" If the jury believe that no valid or binding promise was made, then your labours will be at an end, and your verdict should be for the defendant ; but if you are satisfied from the evidence, that such promise was given, then the next question is, has it been broken ? If you believe Chester Stratton, who is corroborated by the whole transaction, and is wholly uncontradicted, the promise (if any was made) has been broken on the part of the defendant, by his absolute refusal to marry the plaintiff under aggravated circumstances.

" The brother of the plaintiff was very anxious to restore his sister to society, to soothe her afflictions, to hide her misfortunes from public obloquy, and to make her the lawful wife of the defendant, even though she should immediately thereafter be divorced from her husband. This was refused by the defendant, and, if we believe the witness, a sham certificate of marriage was to be procured instead of a real one, and while the brother wanted them to be regularly married, the defendant wished to impose the plaintiff on the world as his wife, though it should be done through fraud and forgery. The jury cannot doubt, I presume, as to the breach of the promise being proved, if any valid promise existed.

" The next question is, if plaintiff be entitled to recover, what damages should be given to her ? This is a case in which the amount of the damages is entirely within the discretion of the jury, upon taking into consideration all the facts and circumstances of the case. Much has been said incidentally of the seduction of the plaintiff by the defendant, but the court have already refused to hear evidence on that point, and we lay the law down to you, that you cannot take into consideration the seduction in order to increase or aggravate the damages.

" When a woman has criminal intercourse with a man, it is their mutual imprudence, their reciprocal offence. She cannot maintain an action against the man for their illicit connexion, and she cannot make her seduction a ground of recovery directly ; she cannot do so indirectly, in an action for a breach of promise of marriage.

" In cases like the present, parties may show their circumstances and condition in life as matters of aggravation or mitigation of damages. There is not much evidence on this point. It is proved that the plaintiff is about twenty-three years of age, and was an amiable, respectable young lady, of a respectable family and hon-

ourable connexions; and that the defendant is about twenty-four years of age, a son of Judge Baldy, has been postmaster, &c., but nothing is said about his wealth, though if Mr. Stratton be believed, the defendant said he could maintain a wife as well as Dr. Leib.

"It is not for the court, but altogether for the jury, to fix the damages which the plaintiff ought to recover if you find in her favour; and we therefore leave it to you, without any expression in relation to the amount. You will, of course, take into view all the facts and all the circumstances connected legitimately with the alleged promise of marriage, and the breach thereof, and do what you consider just and right between the parties.

"The weaker sex naturally look to man for support and protection. They often, too often, place implicit confidence in our promises and protestations of love, and rely with fond affection on our honour and integrity. It is therefore incumbent on us, when a deserted female calls upon us to compensate her for the treachery of a fellow man, to assist in alleviating her sorrows, in healing her wounded feelings, and in remunerating her, as far as is just, for lost prospects, broken vows, which have consigned her to celibacy perhaps for life. The cause is with you, and I am confident you will render such verdict as your good sense and unbiassed judgment will approve."

The jury found in favour of the plaintiff, assessing her damages at $3,000.

The above charge having been filed, at the request of the defendant, in this court, six errors were assigned in it, which are sufficiently set forth in the opinion of Mr. Justice ROGERS.

*Bancroft*, for the plaintiff in error.

*Pleasants*, *Cooper*, and *Comly*, for defendant in error.

The opinion of this court was delivered by

ROGERS, J.—Although an action for breach of a promise of marriage is an action on a contract, yet the circumstances which attend its breach, before, at the time, and after, may be given in evidence in aggravation of damages. This I have never known to be disputed; and so far has this principle been extended, that Chief Justice Parsons, a jurist of acknowledged talents, in Paul *v.* Frazier, 3 Mass. Rep. 73, ruled, that where seduction has been practised under colour of a promise of marriage, the jury may consider it to aggravate the damages in an action on the contract. The plaintiff in error principally relies on Weaver *v.* Bachert, 2 Barr, 80,

Vol. XI.—41

contending, on the authority of that case, that a contract of marriage is to be construed by the rules of the construction of contracts generally; but that case decides nothing more than that, in an action for promise of marriage, seduction cannot be given in evidence; first, because the plaintiff cannot claim compensation for her own guilt; and this, it seems, is principally on the ground, that if the daughter could give evidence of seduction in her action on the promise, the defendant would be doubly exposed to vindictive damages; inasmuch as the father could give such evidence in his action of the seduction. And for the same reason, in Foster *v.* Scofield, 1 Johns. Rep. 299, it is ruled, that in an action brought by the father for the seduction of the daughter, the daughter cannot be a witness to prove a previous promise of marriage in aggravation of damages, for she has her own right of action for the breach of the promise. The cases cited depend on the rational principle, that each is a substantive ground of action, pertaining to different persons, and it would be a wrong to the defendant, to permit him to be twice mulcted for the same offence. But in neither of these cases is it doubted, but, on the contrary, it is expressly admitted, that where these objections do not occur, his improper conduct, in which she does not participate, and is not at all to blame, may be given in evidence, to enhance the damages for such heartless, unprincipled, insulting, and outrageous behaviour to the person he has cruelly deceived. It would be a mockery of justice to confine the jury to give compensation merely for the value of a worthless husband; for that would, in every case, be equivalent to saying that the plaintiff should be entitled to nothing. So far, it is true, it is an action on a contract, but you may, notwithstanding, under peculiar circumstances, which it is impossible particularly to point out, recover exemplary or vindictive damages; in that respect, the action partakes of the nature of a tort. In the case in hand, we see nothing in the charge to which just exception can be taken. The court evince an anxious desire to induce the jury to discard from their minds all considerations arising out of the seduction of the plaintiff, whether effectually or not it is not our place to determine. "Much has been said (say the court) incidentally of the seduction of the plaintiff by the defendant, but the court have already refused to hear evidence on that point; and we lay down the law to you, that you cannot take into consideration the seduction, in order to increase or aggravate the damages. When a woman has criminal intercourse with a man, it is their mutual imprudence, their reciprocal offence: she cannot maintain

an action against the man for their illicit connexion; she cannot make her seduction a ground of recovery directly, nor can she do so incidentally, in an action for breach of promise of marriage." The court say everything that can be reasonably expected, to guard the jury against any influence which does not legitimately belong to the case. There is nothing we can perceive in the charge calculated to "mislead the jury, to increase prejudices already greatly excited, or any evidence that the judge partook strongly of the feelings of the jury, and infused these feelings into their minds, whereby reason was expelled, and passion and prejudice made to supply its place." There is nothing either poetical or sublime, as the counsel of the plaintiff erroneously suppose. The charge contains a fair, solemn exposition of the law of the case; it is impartial and just; and as to the evidence, in my judgment, he might with great propriety have said more, he could not very well under all the circumstances disclosed by the evidence, have said less. The court instruct the jury as requested: "That a promise to marry on condition of illicit intercourse is illegal, and a consideration that will not support a promise; but refuse to instruct them, that the letter of plaintiff to defendant was to be construed as a promise, on condition she would permit the defendant to have illicit connexion with her, and that this promise being in writing, she cannot resort to inferior evidence to establish her claim." A promise to marry on an illegal consideration is virtually void, but it was proper that all the evidence should be submitted to the jury.

It was their province to determine on the whole case, whether there was an absolute unconditional agreement to marry, or whether the promise was induced by the consideration mentioned.

The letter referred to, fairly admits of the construction, not only of a promise to marry at the time of the illicit connexion, but it contains the allegation of a previous promise, an agreement without reference to, and independent of the criminal act. The letter, with the other evidence, was properly left to the jury for them to determine the nature of the contract; charging them, that if she referred to a solemn promise made before the illicit connexion, such promise would be obligatory on the defendant if acceded to by the plaintiff; that the jury were not precluded from finding that a promise of marriage was made by the parties, if the other evidence in the cause warranted them in so doing. In this we perceive no error, for the cause must depend on the whole evidence, and not isolated or detached parts. The charge is said to be erroneous

in this: that it is contradictory, calculated to mislead the jury, instructing them in one point that they could not consider situation for the purpose of aggravating damages, and in another, that they should take into consideration all the facts and circumstances that are legitimate, without informing them what was legitimate, or what was illegitimate; and in saying, they may consider what is right and just between the parties. If charges are to be scrutinized in the manner attempted here, few would stand the test of legal criticism.

It must be taken as a whole, and not in detached parts; and, viewed in this light, it is paying the jury a poor compliment to suppose they could be misled by anything contained in the charge. We must attribute to them ordinary understanding—a capacity to understand language in its common acceptation. In using the word legitimate, it is evident the court intended again to remind the jury, that they must discard from their minds all allusion to the seduction of the plaintiff, for which, as they have already instructed them, damages cannot be given. All other circumstances of improper behaviour might legally influence them in aggravation of damages. The judge remarks that nothing is said about the wealth of the defendant, though, if Mr. Stratton is believed, the defendant said he could maintain a wife as well as Dr. Leib. There is no error in this, for it is literally true. There is no evidence of defendant's wealth, for all Dr. Leib says (and this is the only evidence touching the point) is, "that he did not know he had wealth;" or, in other words, he knows nothing about his circumstances.

The bills of exception, which are ten in number—one, the second to the evidence, having been withdrawn—remain to be noticed. These depend on the principle already noticed, and are urged by the plaintiff in error on the erroneous idea that this action must be governed by the same rules of construction as applied to all other contracts. In reply to an affecting appeal by the brother to his sense of honour, justice, and humanity, the defendant peremptorily refuses to perform the promise which he admits he made, but makes the heartless and insulting proposal of procuring a false certificate of marriage by the aid of a justice of the peace in Roaring Creek. This was his expedient to save his victim from degradation! It was evidence on two grounds: first, in aggravation of damages; and second, as evidence of his refusal to perform his promise. It is said the court erred in admitting evidence of the insolent language and conduct of the defendant to Dr. Leib,

the friend and relative of the defendant. The witness testifies, that, after the disclosure of his infamous conduct to his sister, instead of exhibiting contrition and sorrow for the grievous wrong, he accosts him in a taunting manner as to the amount of damages he might be compelled to pay.

The plaintiff in error contends, that the testimony is not only irrelevant, but that it is contrary to the plain and familiar rule for the construction of contracts. On this point we are of a different opinion, for the reasons already given.

That such conduct and behaviour is calculated to excite the indignation of every correct man, no person living can doubt. Not content with doing the plaintiff an irreparable wrong, he adds insult to injury. In estimating the damages, all the circumstances directly arising from the injury must be taken into consideration. From the nature of the case, there can be no certain rule to guide the jury. The conduct and behaviour of the defendant before, at the time, and after his refusal to perform his promise, must be taken into view; as, for example, when he exhibited wanton cruelty, unnecessary and heartless exposure of his victim's infamy, harassing her feelings, and boasting of his triumph over her virtue, and exposing her to the scoffs of a pitiless world. It is true, juries, and sometimes courts, are occasionally carried away by feelings of indignation; but it is an honest prejudice, if prejudice it can be called, and, if carried to excess, it may be corrected by a motion for a new trial. There is surely some difference to be made in the amount of damages to be given, where the refusal to perform the promise is made privately, with delicacy, and a proper and decent regard to the feelings of the injured girl, or where it is made publicly, accompanied with insolence, contumely, and insult. Who does not feel that, in this case, on the same principle, the attempted defence was such an aggravation of the injury as to call for enhanced and exemplary damages?

Judgment affirmed.