Hornak *v.* Pittsburgh Railways Company et al., Appellants.

Argued October 9, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for railways company, appellant.

*Harry W. Miller,* with him *Royston, Robb, Leonard, Edgecombe, Miller & Shorall,* for Merante, appellant.

*Leo P. Hajdukiewicz,* with him *Samuel R. Sciullo,* for Merante, appellee.

*P. J. McArdle,* with him *Frank J. Kernan,* for Shipleys, appellees.

*Clem R. Kyle,* with him *Michael B. Kaleugher,* for Joanne Hornak, appellee.

*Eric G. Koskoff,* with him *Evans, Ivory & Evans,* for Martin E. Hornak and Joanne Hornak, appellees.

OPINION BY MR. JUSTICE EAGEN, January 15, 1969:

On December 21, 1962, three motor vehicles figured in an accident in the Schenley Park area of the City of Pittsburgh. An automobile operated by Joanne Hornak (Hornak) in which automobile Erma Shipley was a passenger, collided with a bus of the Pittsburgh Railways Company (Railways). At the time of the collision both vehicles were traveling in the opposite direction on a four lane, slush covered, slippery highway; the collision occurred when one of the vehicles crossed the medial line. An automobile which was operated by Anthony Merante and which was traveling in the same direction as the Hornak vehicle and immediately to its rear failed to stop in time and collided with the bus. As to whether or not it also collided with the Hornak vehicle, the evidence at trial was not in agreement.

Three lawsuits resulted and, without objection from the parties, were consolidated for trial. In the first action, Joanne Hornak and her husband sued Railways for her personal injuries and the property damage suffered. Railways joined Merante as an additional defendant and also counterclaimed for its property damage. In the second action, Erma Shipley and her husband sued Railways for her personal injuries and the original defendant joined Hornak and Merante as additional defendants. In the third action, Merante sued Railways for personal injuries and property damage and Hornak was joined as an additional defendant.

The trial consumed several days and was finally given to the jury for consideration and decision about

11:45 a.m. on January 19, 1967. Shortly before 7 p.m. the jury returned to the courtroom with these verdicts: PLAINTIFF SHIPLEY: We find "Pittsburgh Railways a corp. Not Guilty. Anthony Merante Not Guilty. Joanne Hornak Guilty. George Shipley $3000.00. Erma Shipley $50,000." PLAINTIFF HORNAK: "Pittsburgh Railways Corp. Not Guilty and Anthony Merante Not Guilty." PLAINTIFF MERANTE: "Pittsburgh Railways Not Guilty and Joanne Hornak additional defendant Not Guilty."

The trial judge refused to record the verdicts and directed that the jury be kept together pending a conference of court and counsel. At this conference, there was sharp disagreement as to whether or not the verdicts should be recorded. Counsel for Hornak maintained that the verdicts were inconsistent and that a mistrial should be declared. Counsel for Merante as a defendant argued that there was no inconsistency and that the verdicts should be recorded. Counsel for Railways contended that there was no inconsistency in any of the verdicts as to its liability and that the verdicts, at least in this respect, should be recorded. However, Railways' counsel admitted that there was an inconsistency as to "the findings with respect to Joanne Hornak" and suggested that the jury be given the opportunity to deliberate further and to resolve this particular inconsistency. The trial judge denied the motion for a mistrial, refused to record the verdicts or any portions thereof, and proceeded to instruct the jury further.

He told the jury that it had found Hornak "liable" in the Shipley action, while in the Merante action it had found Hornak "not liable in negligence," and that such findings were inconsistent. He directed the jury to deliberate further and to return a verdict in accordance with the instructions received at the close of the evidence. Exceptions were entered to the court's in-

structions. The jury resumed deliberations at 7:27 p.m.

At 7:48 p.m. the jury forwarded the following written inquiry to the trial judge: "Can we find no one negligent? No one guilty? Can we just find Pittsburgh Railways not guilty and not mention the additional defendant in cases where Merante is plaintiff?"

Counsel was informed of the jury's inquiry, and again the trial judge was confronted with conflicting points of view. The jury was returned to the courtroom.

In part, the trial judge then said this to the jury:

"In the Shipley case you found the additional defendant Hornak solely liable. That was your verdict, was it not?

"All right. In the Merante case you found the additional defendant Joanne Hornak not liable. That was your verdict. Was it not?

"Well, that's your inconsistency. You can't have her not liable in one case and liable in the other case under the law . . . ."

He then told the jurors that they could not evade their responsibility of determining Hornak's liability in the Merante action, but he also admonished that all verdicts must be consistent.

At the end of this instruction, the court then inquired of the jury: "Are there any questions the court can answer or any additional instructions?" Juror Number Eleven then posed the following question: "Your Honor, is—Would Mrs. Hornak be solely liable for the damage to Mrs. Shipley regardless of whether we found that she violated any Motor Vehicle Code or was really negligent in any other way?"

In answer to this, the trial court stated that either a violation of the Code or negligence were permissible grounds of liability if causally productive of the accident, but that Hornak could not be found "liable" in the Shipley case and not liable in Merante case.

After another conference of the court and counsel at side bar, the following ensued: "THE COURT: Are there any other questions from any other jurors? Is the Court's response to the questions understandable on the part of the jury? Do you understand? JUROR NUMBER EIGHT: I don't understand. THE COURT: You don't understand all of it? JUROR NUMBER EIGHT: Not all of it. THE COURT: Is there any response to the Court's question? The Court will now propose another question to the jury: Does this jury understand the law of negligence as given to you by the Court this morning as to the test of establishing liability? Do you understand? (No response). THE COURT: All right, and now at ten minutes after eight the Court withdraws a juror in each of the cases and declares a mistrial for the reason that the jury has had this case since 11:30 this morning and since one of the jurors— as Juror Number Eleven has raised questions which obviously go to the heart of the entire charge, indicating to the Court that perhaps the basic law of negligence was not comprehended by this jury and, accordingly, we will discharge the jury without a verdict in these cases."

Exceptions were entered to the court's action, and post-trial motions by Railways and defendant Merante to record verdicts favorable to them were denied by the court en banc. In its opinion (written by the trial judge), the court emphasized that it considered the entry of the mistrial order proper since the trial judge was convinced that the jury was confused and unable, or at least unwilling, to apply the law given to it by the court in determining liability in the various cases. Railways and defendant Merante filed these appeals.[1]

---

[1] Under the unique facts presented, we consider the lower court's action to be in effect one granting a new trial. The pertinent orders are therefore appealable. Cf. *Pittsburgh v. Dinardo*, 410 Pa. 376, 189 A. 2d 886 (1963).

We conclude that the trial judge erred in ruling that the verdicts were inconsistent and that they should not be recorded. It is true that if by the use of the term "not guilty" in the verdicts, the jury meant "not guilty of negligence," then clearly the verdicts were inconsistent because Hornak could not be guilty of negligence in the Shipley action and not guilty of negligence in the Merante action. However, if the jury meant by the term "not guilty"—"not liable," then no inconsistency existed for there are ample reasons in the record for the jury to deny plaintiff Merante recovery, even though Hornak was guilty of causative negligence. For instance, the jury could properly conclude that Merante was contributorily negligent, and therefore could not recover. But the appellees argue that if that is so, then why should not this same negligence render Merante liable in the Shipley action? One answer to this question is that, under the evidence, the jury could find that the Merante automobile did not strike the Hornak automobile and hence, Merante's negligence was not the proximate cause of Shipley's injury.

It is true that a trial judge has wide discretion in directing further deliberations by a jury so that the jury might correct matters of informality and uncertainty. *Ason v. Leonhart*, 402 Pa. 312, 165 A. 2d 625 (1960), and *Van Buren v. Eberhard*, 377 Pa. 22, 104 A. 2d 98 (1954). But by the same token, every reasonably possible intendment is to be made in favor of the findings of a jury, and an inconsistency may justifiably be declared to exist only if there is no reasonable theory or conclusion to support the jury's verdict. 89 C.J.S., Trial §§562, 563 and 6 Pennsylvania Standard Practice, Verdict, Chapter 27, §4.

In using the term "not guilty," the jury, in our view, was merely expressing in laymen's language the legal liability imposed upon certain parties whose acts

caused injury, compensable in money damages, to the person and property of other parties. We think that an intelligent consideration of the record indicates that the findings made do fitting justice to the evidence as well as to the court's exposition of the applicable legal principles. If the trial judge entertained a doubt as to what the jury meant by the term "not guilty," he should have directed a specific inquiry to them, rather than categorically instructing them that an inconsistency existed, thus jeopardizing perfectly sound verdicts won after a long and arduous trial.

And although we are delicately aware of the principle that an order granting a new trial should not be reversed unless there is a clear abuse of discretion, or an error of law which controlled the outcome of the case,[2] still we are not persuaded that the events occurring subsequent to the verdicts justified the court in directing a retrial here. Quite the opposite, this is a case where an error of law necessitates a reversal of the new trial order.

The legal imprecision evident in some of the jurors' thinking after the verdicts is quite understandable, in view of the fact that the trial judge instructed them that they were wrong when, in fact, they were right. This confusion resulted from the judge's own error in failing to recognize that the verdicts were consistent with the evidence and the law.[3]

The orders of the court below are reversed and the record is remanded with directions to record the verdicts. All aggrieved parties are then to be given a reasonable opportunity to file a motion for a new trial

---

[2] *Maher v. College Club of Pittsburgh*, 427 Pa. 621, 235 A. 2d 134 (1967).

[3] Nothing said herein is intended as a reflection on the trial judge involved. He has established himself as a dedicated and very competent judge.

based on asserted error other than that disposed of in the present appeals.

It is so ordered.

Mr. Justice COHEN dissents.

Mr. Justice MUSMANNO did not participate in the decision of this case.