**UNITED STATES of America, Plaintiff,**

v.

**534.28 ACRES OF LAND, MORE OR LESS, situate IN HUNTINGDON COUNTY, et al., Defendants.**

Civ. A. No. 75–504.

United States District Court,
M. D. Pennsylvania.

Dec. 28, 1977.

James Walker, Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Francis Searer, Lewistown, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

In this land condemnation case, a jury returned a verdict on September 29, 1977, in favor of the landowners, William R. Suba and his wife Jayne Ann Suba, in the amount of $61,500. The Government has filed a motion for a new trial or, in the alternative, for a remittitur.

The reasons stated in support of the motion are (1) the verdict was against the weight of the credible evidence; (2) the verdict was excessive in light of the credible evidence; (3) the Court erred in admitting comparable sales which reflected a per acre value that was enhanced by the very project for which the subject property was acquired; (4) the verdict was based upon sympathy and prejudice for the Defendants; (5) the Government was unfairly prejudiced by the attack upon the credibility of its expert appraisal witness by suggestions and innuendos of counsel that the witness was in error concerning the location of Fink's Bridge, according to Government's Exhibit 6, a state prepared highway map of Huntingdon County, and the failure of Suba's counsel to follow up such suggestions and innuendos with any evidence to, in fact, impeach the Government witness' testimony.

For the following reasons the Government's motion will be denied.

This condemnation involves the taking of 120.20 acres of land in Lincoln Township,

Huntingdon County, Pennsylvania, on April 28, 1975, for the United States Government's Raystown Lake Project.

The Condemnee's case consisted of testimony by William R. Suba, one of the owners of the subject property, testimony by Phillip E. Gingerich, an expert appraiser, as well as four exhibits including two maps and several photographs of the subject property. The Government's case consisted of the testimony of an expert appraiser, Richard L. Bowers, various exhibits including an aerial photo of the area, a topographical map, photographs of the improvements on the subject property and of several "comparable" properties, and a road map with "comparables" marked on it.

The condemned property had at one time been a farm which had been allowed to grow up into brush and timber and which was used at the time of taking for hunting by Mr. Suba and at least a dozen other persons with Mr. Suba's permission. Testimony developed that the main improvement on the property was a three-story tin roof house with basement and stone foundation. The house consisted of approximately five rooms, including three bedrooms, and an attic. It was equipped with electricity, but no indoor sanitary facilities. At the time of the taking the house was used as a hunting cabin. Various other features of the property were brought out in testimony from the landowner, Mr. Suba, and his expert appraiser, Mr. Gingerich. On the land were several semi-improved township roads providing good access to much of the property. Also, the property was within a couple miles of boat launching facilities on the old Raystown Lake.

■ Mr. Suba, as a landowner, gave his opinion as to the fair market value of his property at the time of taking. The basis for admitting opinion testimony of a landowner in a condemnation proceeding on valuation of his land is a presumption of special knowledge arising out of ownership. *United States v. 147.47 Acres of Land in Monroe County, Pennsylvania*, 352 F.Supp. 1055 (M.D.Pa.1972).

■ Mr. Suba described the property and the use to which he was putting it at the time of the condemnation. He testified that various people had approached him wanting to buy his property, both prior to announcement in 1967 of the Raystown Project as well as after that time. He stated that he also had discussed its value with neighbors. His opinion, as a landowner, was that this property was worth $80,000 as of April 28, 1975, as unaffected by the federal project. The Government claims that the "pathos evinced by the appearance of Mr. Suba on the stand was obviously too much for the jury to withstand in arriving at an unbiased verdict". Government's brief, page 4. Although it was obvious by Mr. Suba's demeanor that he was quite nervous while testifying, we do not believe that the jury was unable to objectively weigh Mr. Suba's testimony in reaching its decision. Indicative of this is the fact that the verdict came in some $18,500 lower than Mr. Suba's estimate of his property's worth.

■ The more serious ground raised by the Government in its motion for a new trial or remittitur is its allegation that the comparable sales used by the landowner's expert appraiser were tainted by having been influenced by the existence of the project for which the Subas' property was being taken. The law is settled that the United States does not pay the amount by which the land condemned for a project might be enhanced in value by the very project for which the land is needed. *United States v. Reynolds*, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). The owner of the land taken by a governmental agency is entitled to the fair market value of the property at the time of the taking as unaffected thereby. *United States v. Miller*, 317 U.S. 369, 373–374, 63 S.Ct. 276, 87 L.Ed.2d 336 (1943).

■ Sales of comparable land in the area provide valuable assistance in determining fair market value. See *United States v. Featherston*, 325 F.2d 539 (10th Cir. 1963). A comparable sale must be one that sufficiently resembles the parcel in question

with respect to time, place and circumstances that reasonable men would consider it in evaluating fair market value. *Nichols on Eminent Domain*, § 13.02(4) "Selection and Presentation of Comparable Sales."

The time span involved in this project creates a distinct problem in finding comparables. The project was initially announced in 1967, however the Suba's tract was not condemned until April 28, 1975, approximately eight years later. Certainly there was opportunity for land speculation occurring in the area during that period, and this creates problems for an appraiser trying to find comparable sales unaffected by the government project. Finding one desirable feature for a comparable may then necessitate losing another. For instance, if one takes a comparable which is far enough away in location to be unaffected by the new Raystown Lake, then its value may not properly reflect proximity to the old Raystown Lake. However, if one takes a comparable which was as close as Subas' to the old Raystown Lake, then it is possible that the effects of the new project affect the transaction.

■ In this regard, the Government has criticized the comparable sales used by the landowners' expert appraiser, Mr. Gingerich, alleging that they reflected a per acre value that was enhanced by the project for which the subject property was acquired. The landowners criticized the Government's comparables for being too far away from the old Raystown Lake to be truly comparable. It is within the discretion of the trial court to allow the jury to determine for itself whether the described properties were in fact comparable to the condemned tract, and if found comparable, to determine what weight should be given thereto. *United States v. 84.4 Acres of Land, etc.*, 348 F.2d 117, 119 (3d Cir. 1965). We believe this approach is especially desirable in this case, considering the difficulties in finding particularly satisfactory comparables.

The Court accurately and adequately charged the jury on the use of comparable sales in arriving at the fair market value of the land later and then told the jury:

"You must determine the fair market value of the property in question on the date of taking, *but you must exclude any increase in the fair market value of the property which has occurred as a result of the decision of the United States to undertake the public project for which the defendant's land is being acquired.* The United States is not required to pay for increases in market value which it has itself created either by virtue of the project it has undertaken or by virtue of its demand for property in the area.

Therefore, in fixing the fair market value of the property taken, you are not to consider increased value, if any, which this property might have enjoyed by its proximity to the project had it not been taken. In other words, in ascertaining fair market value, you should not in any way consider or be influenced by the establishment of the Raystown Dam Reservoir."

■ The Government has objected to the cross examination of Mr. Bowers, their expert appraisal witness, as to the location of Fink's Bridge, on Government's Exhibit # 6, a state prepared highway map of Huntingdon County. Apparently, as admitted by Mr. Bowers, the state map was incorrect in its indication of the location of Fink's Bridge. The proximity of Fink's Bridge and the public boat launch there for the old Raystown Lake was brought out earlier in the trial as a factor in figuring the value of the Subas' property. Although the point was belabored to some extent, we believe the possibility that this bridge was incorrectly located on a Government exhibit was properly raised by counsel for the landowners.

■ The verdict has been attacked as being against the weight of the credible evidence and excessive in light of the credible evidence. We have previously discussed the testimony of Mr. Suba, one of the landowners, and Mr. Gingerich, his expert appraiser. Although the Court might have arrived at another figure in valuing the Suba property, we cannot find that the verdict returned by the jury was either against the weight of the credible evidence

or excessive in light of the credible evidence. Mr. Gingerich appraised the Suba property at $72,100, Mr. Suba appraised it at $80,000, while the Government's expert, Mr. Bowers appraised it at $33,000. The verdict of the jury was $61,500. Because the verdict was within the range of the expert testimony as to fair market value, the verdict cannot be said to be against the weight of the evidence simply because it ranges closer to the landowners' appraisal than to the Government's appraisal. *United States v. 633.07 Acres of Land, More or Less, In Huntingdon County, Commonwealth of Pennsylvania*, 362 F.Supp. 451 (M.D.Pa.1973).

To warrant a new trial because of excessiveness of amount of compensation in a condemnation action, the Court must find the verdict so manifestly and palpably against the evidence as to compel the conclusion that it is contrary to right and justice. *United States ex rel. Tennessee Valley Authority v. 544 Acres of Land, More or Less, in Franklin County, Tennessee*, 309 F.Supp. 46 (E.D.Tenn.1969). The verdict in this case was not so against the weight of the credible evidence as to require a new trial or remittitur, and therefore the Government's motion will be denied.

An appropriate order will be entered.