420 A.2d 556

Ann Marie D'Amico BALDASSARI a/k/a Ann Marie D'Amico, Individually and as a natural parent and guardian of Dawn Baldassari, Mia Cara Baldassari, Elmo Baldassari, and William Baldassari,

v.

**Elmo BALDASSARI, Appellant.**

Superior Court of Pennsylvania.

Argued June 4, 1979.

Filed May 30, 1980.

Gifford R. Cappellini, Wilkes–Barre, for appellant.

George Clark, Scranton, for appellee.

Before PRICE, GATES, and DOWLING, JJ.*

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania and Judge JOHN C. DOWLING of

PRICE, Judge:

Appellee, Ann Marie D'Amico Baldassari (hereinafter appellee), is the mother and guardian of the other named appellees and appellant is their natural father. In 1960, appellant and appellee began living together, and a total of four children were born of the relationship, one each in 1962, 1965, 1968 and 1972. The parties have never been married to one another, and appellant has been lawfully married at all times to another woman, a fact known by appellee since their initial meeting in 1960. From 1960 until 1974, appellee assumed the traditional roles of wife and mother, maintaining the home, rearing the children, entertaining appellant's business associates and adopting his surname. They formed, in the true sense of the term, a family unit, and appellee held herself out to the public at large as being married to appellant, a status not discovered by their acquaintances or their children to be false until institution of the present suit. Despite their prolonged cohabitation, the relationship between the parties was less than compatible with repeated periods of separation. Early in 1973, appellee vacated the apartment in which she was residing with appellant and took with her the youngest child. After repeated requests by appellant for appellee to return and resume the family relationship, the parties entered into an agreement dated November 1, 1973,[1] wherein for a recited consideration of $1 and a pledge by appellee to provide a home environment for the four children, appellant agreed to lease to appellee for a period of forty years a home that was in the process of being constructed on land allegedly owned by appellant. The

the Court of Common Pleas of Dauphin County, Pennsylvania are sitting by designation.

1. The contract dated November 1, 1973, was the second agreement drawn by the parties. An earlier agreement, apparently drafted in October of 1973, provided that the dwelling house presently under construction would be deeded to appellee, that appellant would pay into an account for the benefit of appellee the sum of $200.00 per month and that appellee and the four children would be named as beneficiaries of two life insurance policies presently held by appellant. That agreement was signed only by appellant and was not asserted in the complaint as a basis for relief by appellee.

agreement further recited that in the event appellant sold the home during the term of the lease, forty percent of the proceeds would be distributed to appellee and sixty percent to the children, and appellant also agreed to provide for a devise of the home in his will to appellee and the children in the same proportions. Upon signing the agreement, appellee moved back into the apartment and resumed responsibility for the children. Relations between the parties did not improve, and appellee vacated the apartment in March of 1974, prior to the completion of the home that was the subject of the earlier agreement. Appellee subsequently discovered that appellant did not own the lot upon which the home was being constructed, but had instead merely been negotiating with the contractor who owned the lot to construct the home according to certain specifications.

On October 1, 1975, appellee filed suit. As amended, the complaint rested upon two theories—the first in trespass for fraud and deceit for inducing appellee to sign the lease and to move back into the apartment with appellant and the children, and the second in assumpsit for breach of the agreement signed on November 1, 1973. After trial, the jury returned a verdict in favor of appellee for $95,000 as the fair market value of the home.[2] Pursuant to a request by defense counsel, the jury answered a special interrogatory and stated that its award was based upon both the trespass and assumpsit theories. However, the trial court later granted appellant's motion for judgment non obstante veredicto on the fraud counts. The court reasoned that because the measure of damages in a fraud action in Pennsylvania is the "actual loss" rule and not the "loss of value of bargain" rule, see *Kaufman v. Mellon Nat'l Bank and Trust Co.*, 366 F.2d 326 (3d Cir. 1966); *Tilghman v. Dollenberg*, 418 Pa. 604, 213 A.2d 324 (1965), the verdict for $95,000 could not be sustained on that basis since appellee did not establish an actual loss in that amount. That ruling has not been chal-

**2.** The jury also returned a verdict on appellant's counterclaim awarding him possession of two automobiles that he had purchased and titled in the name of appellee. That portion of the verdict is not before us in this appeal.

lenged, and the verdict on appeal must be reviewed solely on the basis of the assumpsit theory of recovery.

■ Appellant's first contention on appeal is that the contract was "based upon illegal, immoral or meretricious consideration ... against public policy and should not be enforced as a matter of law." (Brief for appellant at 7). In disposing of this claim we decline appellant's offer to espouse the moral, ethical and legal considerations arising from the type of relationship to which the parties voluntarily committed themselves. We find such analysis unnecessary, because the evidence presented was sufficient to establish that the contract was supported by consideration other than the future sexual relationship between appellant and appellee.

■ While a contractual arrangement founded solely upon consideration paid for the procurement of sexual services would be unenforceable as contrary to public policy, *see* *Baldy v. Stratton*, 11 Pa. 316 (1849); Restatement of Contracts § 589 (1932), the mere contemplated cohabitation between negotiating parties does not render them incompetent to form binding contracts regarding other transactions. *See e. g., Marvin v. Marvin*, 18 Cal.3d 660, 557 P.2d 106, 134 Cal.Rptr. 815 (1976); *Tyranski v. Piggins*, 44 Mich.App. 570, 205 N.W.2d 595 (1973); *Kozlowski v. Kozlowski*, 164 N.J.Super. 162, 395 A.2d 913 (1978), 6A Corbin on Contracts § 1476 (1962); Restatement of Contracts §§ 589, 597 (1932). Rather, an agreement founded upon mutual concern for the rearing of the natural bounty of the contracting parties will not be invalidated simply because the parties engaged in sexual conduct prior to the formation of the agreement and may have subsequently continued such relations, when that activity does not form a basis for the agreement.

The evidence presented in the instant case establishes that the relationship between appellee and appellant did not form the basis for the agreement on November 1, 1973. That agreement made no mention of a continuing relationship between appellee and appellant, nor even of an obligation

for the parties to resume cohabitation. The only covenant regarding appellee's obligation under the lease was as follows:

"LESSEE, by the acceptance of this lease, does hereby undertake and agree to provide a home in the said dwelling for Dawn Baldassari, Mia Cara Baldassari, Elmo Baldassari and William Baldassari so long as they desire to reside in the said dwelling during the term of this lease."

Appellant also testified that his motive for entering into the agreement was to assure the proper atmosphere for the upbringing of the children. Thus, we find the evidence sufficient to support the conclusion that the purpose of the agreement was to provide a home and family environment for the children and that the agreement was not based upon consideration that was immoral, illicit, meretricious or otherwise contrary to public policy. On this ground, we find appellant's first contention to be without merit.

Appellant next contends that the court erred in permitting appellee to venture an opinion as to the value of the home that was the subject of the lease agreement.[3] In permitting appellee to testify, the trial court extended the rule that an owner of property is competent to venture an opinion as to its value under a presumption of special knowledge arising out of such ownership. *See United States v. 534.28 Acres of Land, More or Less, in Huntington County*, 442 F.Supp. 82 (M.D.Pa.1977); *Silver v. Television City, Inc.*, 207 Pa.Super. 150, 215 A.2d 335 (1965). Appellant's only challenge to the trial court's action in extending this rationale to include appellee is to draw our attention to section 704 of the Eminent Domain Code, Act of June 22, 1964, Spec.Sess., P.L. 84, Art. VII, § 704, *as amended*, 26 P.S. § 1–704 (Supp.1979–80), which permits a condemnee to ex-

---

**3.** Appellant also objects to the admission of the opinion of a real estate agent on the basis that the valuation put forth by the agent was as of November 1977, when the agent first viewed the home, rather than as of the time of the signing of the lease on November 1, 1973. Because appellant did not raise this objection in post–trial motions, the issue has not been preserved for appellate review. *See, e. g., Lewis v. United States Rubber Co.*, 414 Pa. 626, 202 A.2d 20 (1964); *Leopold v. Davies*, 246 Pa.Super. 176, 369 A.2d 868 (1977).

press an opinion regarding the value of property in a proceeding under that code. Appellant reasons that because "condemnee" is usually synonymous with ownership of the property, that Act reflects a legislative judgment that only actual owners are competent to testify to the value of property. We find this reasoning inapplicable for various reasons.

First, the instant proceeding was not brought as an action in eminent domain, and is not governed by the pronouncements of the Eminent Domain Code. Second, the code is not a legislative pronouncement limiting testimony to actual owners, and "condemnee" has been construed to include any party with an interest in the property, including a mere lessee, the status allegedly enjoyed by appellee. *See Hoffman v. Commonwealth*, 422 Pa. 144, 221 A.2d 315 (1966). Finally, appellant's contention is contrary to the general rule that any person with special knowledge regarding the characteristics of a particular tract of land may venture an opinion as to its value. As the supreme court has stated:

> "Courts are not restricted to receiving only expert testimony to fix value. In *Westinghouse Air Brake Co. v. City of Pittsburgh*, 316 Pa. 372, [376, 176 A. 13, 15] (1934), this Court said: 'Market value or damages may be established by the owner of the property, by expert witnesses, or by persons with knowledge and experience qualifying them to form a reasonably intelligent judgment as to value.'"
> *Walnut Street Federal Savings & Loan Assoc. v. Bernstein*, 394 Pa. 353, 356, 147 A.2d 359, 361 (1959).

*See Porter v. Commonwealth*, 454 Pa. 461, 309 A.2d 709 (1973).

In the instant case, appellee testified that she was extensively involved in designing the home and choosing many of its interior fixtures. Given this testimony, we believe that appellee had the type of special knowledge that qualified her to express an opinion as to the value of the home. Additionally, appellee presented the expert testimony of a qualified realtor whose testimony, if accepted, would have established the value at $120,000.00.

Appellant's third contention is that the jury's verdict is inconsistent, thus requiring the award of a new trial. In this respect, appellant contends that because the jury answered a special interrogatory and stated that its verdict for $95,000 was based upon both the trespass and assumpsit theories and because the trespass theory is totally inadequate to support that verdict, a new trial must be awarded since the portion of the verdict based upon each theory is not clear. We find this contention to be without merit for appellant fails to perceive the scope of our appellate review.

Generally, inconsistencies in jury verdicts are not permissible in civil actions in this Commonwealth. *See Gross v. Lockwood Folding Box Corp.*, 443 Pa. 159, 277 A.2d 359 (1971); *Interstate Creamery v. Reinerth*, 212 Pa.Super. 335, 243 A.2d 451 (1968). Inconsistency mandating a new trial most often occurs when a jury returns a verdict assessing liability on the part of a principal while finding no liability on the part of the agent when the only foundation for the principal's liability is the imputed negligence of the agent under the doctrine of respondeat superior. *Compare Matkevich v. Robertson*, 403 Pa. 200, 169 A.2d 91 (1961), *with East Broad Top Transit Co. v. Flood*, 326 Pa. 353, 192 A. 401 (1937). However, "every reasonably possible intendment is to be made in favor of the findings of a jury, and *an inconsistency may justifiably be declared to exist only if there is no reasonable theory or conclusion to support the jury's verdict.*" *Hornak v. Pittsburgh Ry. Co.*, 433 Pa. 169, 175, 249 A.2d 312, 315 (1969) (emphasis added).

In the instant case, the trial court recognized that the evidence was insufficient to support the verdict for $95,000 on the trespass counts and properly entered judgment non obstante veredicto on that basis. However, the evidence was sufficient to support the verdict on the assumpsit counts. Therefore, because there is a "reasonable theory or conclusion to support the jury's verdict," it may not be declared inconsistent. *Id.* Moreover, appellant's contention that an apportionment of $95,000 between the two theories of recovery may have revealed a continuing

inconsistency is speculative and we decline to hold that a new trial is warranted because the jury was not instructed to make such an apportionment. In response to the special interrogatory requested by appellant, the jury stated that it found the full verdict of $95,000 appropriate under both theories; the jury did not arrive at that figure by totalling the recovery applicable to each theory. Also, appellant failed to request that the jury be instructed to render an apportionment, and therefore, he cannot now assert that the absence of such an instruction warrants a new trial. *See Reading Motor Sales, Inc. v. United States Fidelity & Guaranty Co.*, 439 Pa. 149, 266 A.2d 687 (1970); *Campana v. Alpha Broadcasting Co.*, 239 Pa.Super. 39, 361 A.2d 708 (1976).

Appellant next contends that the verdict of $95,000 on the assumpsit theory is not supported by the evidence because appellee failed to present sufficient proof of her loss arising from the breach of the agreement.

Generally, a vendee's action for breach of a contract to sell land [4] is limited to recovery of the consideration paid plus reasonable expenses incurred. If this measure was applied in the instant case, the verdict could not stand on the assumpsit theory since appellee failed to prove damages of this nature. This rule is inapplicable, however, when the defendant acts in bad faith in breaching the contract, in which case the "loss of bargain" measure of damages is utilized.

"[B]ut where the vendor is guilty of collusion, tort, artifice, fraud or does acts not in good faith to escape from a bad bargain, the vendee is entitled not only to a return of

4. Throughout the majority of his brief, appellant refers to the November 1, 1973 agreement as a lease and addresses the parties as lessor and lessee. However, in presenting his claim regarding appellee's deficiency in proving her loss through breach of the agreement, he categorizes the agreement as one for the sale of land and labels the parties as vendor and vendee. Because appellant's claims are without merit regardless of the posture of the agreement, we have found it unnecessary to resolve the vexing issue as to its proper classification and instead address the merits of the issues as presented.

money paid and expenses, but damages arising from the loss of his bargain or the money he might have derived from its completion. This is the bad–faith rule." *Seidlek v. Bradley,* 293 Pa. 379, 382–83, 142 A. 914, 915 (1928). *See Delvitto v. Schiavo,* 370 Pa. 299, 87 A.2d 913 (1952); *Craven Estate,* 169 Pa.Super. 94, 82 A.2d 60 (1951).

In the instant case, the evidence was sufficient to support a jury's determination that appellant breached the agreement in bad faith.[5] *See Craven Estate, supra* (bad faith by defendant found from imputed knowledge that he had contracted to convey property on prior occasion). Having submitted sufficient evidence to establish bad faith by appellant and her right to recover damages for loss of bargain, appellee cannot be faulted for having failed to establish the value of her consideration and detrimental reliance upon entering into the contract, for recovery would be limited to that measure only when bad faith by the vendor is not established.

Appellant's final contention, memorable only for the creativity upon which it is founded, is that appellee cannot maintain an action in assumpsit for breach of contract because there was no contract that could be breached. In support of this proposition, appellant reasons that because he was not the owner of the property in question at the time he entered into the lease with appellee, the lease was of no

**5.** Appellant testified that at the time he entered into the agreement on November 1, 1973, he though that he owned the land on which the home was being built. Another witness, the contractor who built the home, testified that appellant owned the land adjacent to the lot on which the home was being built, but that the particular lot had been conveyed by appellant to the contractor in March of 1972. The contractor also testified that he started excavation for the home in July 1973 as a "speculation" and did not have a buyer for it at that time. He further testified that appellant contacted him after construction had commenced, expressed an interest in buying the home and requested several modifications. Therefore, it was the task of the finder of fact to determine whether appellant entered into the agreement with knowledge that the home was located on land that he did not own, and whether he acted in bad faith in causing appellee to vacate their common domicile in March of 1974 by engaging in violent behavior, as appellee alleged.

legal effect and therefore appellee cannot maintain a cause of action for appellant's breach of such an agreement. We find this attempt by appellant to bootstrap his false representation concerning ownership of the property into an affirmative defense unfounded in either reason or law. In essence, this reasoning would permit any irresponsible party to enter into a contract fraudulently, exact consideration from the other party and then plead inability to deliver his bargained–for exchange as a defense to the other party's claim for breach. The suit by appellee is founded upon appellant's breach of the agreement executed on November 1, 1973, and the inability of appellant to fulfill his alleged status as a lessor of the property does not preclude appellee from maintaining a cause of action for breach of that lease agreement.

The judgment in the trial court is affirmed.