449 A.2d 573

**Lawrence J. WALSH and Carmella Walsh**

v.

**PENNSYLVANIA GAS & WATER COMPANY, Appellant.**

**Daniel TUCKER and Mary Tucker**

v.

**PENNSYLVANIA GAS & WATER COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed June 18, 1982.

Reargument Denied Sept. 16, 1982.

Petition for Allowance of Appeal
Denied Nov. 5, 1982.

Joseph E. Gallagher, Scranton, for appellant.

Roger Mattes, Scranton, for appellees.

Before WICKERSHAM, VAN der VOORT and LIPEZ, JJ.

WICKERSHAM, Judge:

On March 3, 1978 the appellees herein, Lawrence J. and Carmella Walsh and Daniel and Mary Tucker, filed a complaint in assumpsit and trespass for personal injuries and property damage allegedly caused by the explosion of a gas range Pennsylvania Gas & Water Company (hereinafter Company) sold to the Walshes. The two cases were consolidated for trial which began on March 19, 1979 before the Honorable James M. Munley and a jury. The jury found verdicts for the Walshes in the amount of $50,000 and for the Tuckers in the amount of $10,000. In addition to the general finding for the plaintiffs the jury responded to special interrogatories and found that Company breached an implied warranty of merchantability to the plaintiffs. The jury further found that Company was not liable on a common law negligence theory nor on a products liability theory.

On April 9, 1979 Company filed motions requesting a judgment N.O.V. or a new trial. The new trial was requested on the ground that the answers of the jury to the special interrogatories were inconsistent with the verdicts. Company also requested the court to mold the verdict returned so that it would be in its favor. In an opinion by Judge

Munley dated January 21, 1980, the lower court *en banc* (consisting of Judges Munley, James J. Walsh and Edwin M. Kosik) denied the motions. Judgment was docketed and this appeal followed.

Trial testimony indicated that Lawrence J. Walsh and his wife, Carmella, lived at 413 Taylor Avenue in Scranton, Pennsylvania. They owned the building at 413–415 Taylor Avenue and rented one-half of the duplex to Mr. Walsh's sister Mary Tucker and her husband, Daniel. In January of 1973, the Walshes bought a Roper gas range from Company who installed the range in the Walsh kitchen. After installation, the Walshes had problems with their appliance. The pilot light went out frequently and there was often a strong odor of gas in the house. Record at 13. The oven cracked and one of the glass panels in the oven door shattered. Record at 13–14.

On March 8, 1976, there was a fire in the Walsh kitchen. Mrs. Walsh testified that the stove exploded throwing her across the room. Record at 132. The explosion and subsequent fire so damaged the building at 413–415 Taylor Avenue that the Walsh and Tucker families moved out of the premises. Plaintiffs' expert witness testified that the rear of the appliance continually leaked gas.

The jury retired with a set of special interrogatories. The questions drafted by Company were as follows:

Special Interrogatories to the Jury

-------

Do you find in favor of the plaintiffs? Yes (X) No( )
If your answer is no, disregard the remaining questions. If your answer is yes, answer the following:

1. Did the defendant fail to use due care in installing the range and/or in failing to test for the presence of leaking gas or to test the integrity of the system? Yes( ) No(X)

[Common Law Negligence Theory]

2. Did the defendant breach a warranty to the plaintiffs? Yes(X) No( )

[Breach of Implied Warranty Theory]

3. Was the Roper range with its installation defective? Yes( ) No(X)

[Product-Liability Theory]

Reproduced Record at 208a.

Company frames its sole issue in this appeal thusly:

If a defendant gas company sells and installs a gas stove or range which three (3) years later allegedly explodes and sets fire to the buyer's premises, and upon trial the jury returns a general verdict for the buyer but at the same time makes special findings that

1. the gas company was not negligent in installing the range or in failing to test for leaking gas or in failing to test the integrity of the system (common law negligence theory),

2. the range with its installation was not defective (product-liability theory), and

3. the gas company breached a warranty of merchantability and fitness for use but the buyer's evidence is that there was no causal relationship between the breach of warranty and the 'gas explosion',

should judgment n. o. v. be entered for the gas company, or, in the alternative, should the general verdict be molded to read in favor of the defendant gas company?

Brief for Appellant at 3.

Company argues that plaintiffs' entire case rests on proof that its improper installation of the range caused leaking gas to explode and that the jury's answers to the special interrogatories reject such theory despite the general verdict for the Walshes and the Tuckers.

We first consider whether the court *en banc* erred in refusing to mold the jury's verdict in Company's favor. We have said:

The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is

a cornerstone of the jury system. *See e.g. Wadatz v. Taormina*, 356 Pa. 481, 52 A.2d 220 (1947). In so exercising this discretion, however, the trial judge must tread with caution so as to avoid invading the province of the jury. *May v. Pittsburgh Railways Co.*, 209 Pa.Super. 126, 224 A.2d 770 (1966).

*Richards v. Dravo Corporation*, 249 Pa.Super. 47, 58, 375 A.2d 750, 756 (1977).

While a judge may mold a verdict, the power to do so should be exercised only to express the intention of the jury. *Interstate Creamery, Inc. v. Reinerth*, 212 Pa.Super. 335, 243 A.2d 451 (1968). Review of the record before us shows jury findings for the plaintiffs below both generally and specially. When the intent of the jury is so plain we cannot say the lower court abused its discretion by refusing to mold the verdict in Company's favor. As this court noted in *Baldassari v. Baldassari*, 278 Pa.Super. 312, 420 A.2d 556 (1980):

> Generally, inconsistencies in jury verdicts are not permissible in civil actions in the Commonwealth. *See Gross v. Lockwood Folding Box Corp.*, 443 Pa. 159, 277 A.2d 359 (1971); *Interstate Creamery v. Reinerth*, 212 Pa.Super. 335, 243 A.2d 451 (1968). Inconsistency mandating a new trial most often occurs when a jury returns a verdict assessing liability on the part of a principal while finding no liability on the part of the agent when the only foundation for the principal's liability is the imputed negligence of the agent under the doctrine of respondeat superior. *Compare Matkevich v. Robertson*, 403 Pa. 200, 169 A.2d 91 (1961), with *East Broad Top Transit Co. v. Flood*, 326 Pa. 353, 192 A. 401 (1937). However, 'every reasonably possible intendment is to be made in favor of the findings of a jury, and *an inconsistency may justifiably be declared to exist only if there is no reasonable theory or conclusion to support the jury's verdict.*'

*Id.*, 278 Pa.Superior Ct. at 321, 420 A.2d at 561.

In this case there is evidence supporting the jury's determination that Company breached an implied warranty of mer-

chantability to the plaintiffs. Even assuming *arguendo* that the verdict was inconsistent, the lower court committed no error by not molding the verdict. When a jury returns an inconsistent verdict or a verdict against the weight of the evidence, the remedy is to strike the verdict and grant a new trial. *Interstate Creamery v. Reinerth, supra.*

■■■■ Company also argues that its motion for judgment N.O.V. should have been granted by the lower court. In reviewing the denial of a motion for judgment N.O.V., the evidence together with all reasonable inferences therefrom must be viewed in a light most favorable to the verdict winner; all conflicts in the evidence are resolved in favor of the prevailing party. *See Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979); *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980). Evidence supporting the verdict is considered and the rest rejected. *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968). As we said recently, "A judgment notwithstanding the verdict should be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper. . . ." *Martin v. Soblotney*, 296 Pa.Super. 145, 442 A.2d 700 (1982).

■■■ Applying these tests to this case demonstrates that a judgment N.O.V. was correctly refused. Judge Munley explained the concepts involved in a suit on an implied warranty of merchantability in his charge to the jury:

> . . . The plaintiff contends that the defendant made an implied warranty of the safeness, fitness and merchantability of what he supplied to the plaintiff. In this case that is the gas range. . . . The three questions in this area which you must decide under the theory are, therefore, No. 1, whether a warranty existed; 2, whether the defendant breached the warranty; and, 3, whether the breach of the warranty was a substantial factor in causing harm to the plaintiff. If you find in favor of the plaintiff on all three questions, you will return a verdict for the plaintiff. If you do not find in favor of the plaintiff on all three questions, then the plaintiffs could not recover under this theory of the case.

The law says that where the seller at the time of the sale has reason to know the specific use for which the buyer is purchasing the goods and the buyer is relying on the seller's skill or judgment to select or furnish goods suitable for that use, an implied warranty is created that the goods will be fit for that particular purpose. A seller need not actually know the specific use for which the buyer is purchasing the goods or of the buyer's reliance on the seller's skill or judgment if the circumstances are such that the seller has reason to realize the purpose intended or that reliance exists. A merchant is a person who deals in goods of the kind involved in the transaction or otherwise by his occupation holds himself out as having knowledge or skill peculiar to goods involved in the transaction or one who employes others who by their occupation holds themselves out as having such knowledge or skill. If the seller is a merchant with respect to goods of the kinds sold, an implied warranty of merchantability exists; one, that the goods are of a quality comparable to that generally accepted in the trade under the description or designation of the goods and, two, that the goods are fit for the ordinary purposes for which such goods are used.

Jury Charge at 24-5.

From the evidence adduced at trial the jury properly could find that Company was a merchant with respect to gas ranges. Given that Company is a merchant the jury could then find that there was an implied warranty of merchantability; the range had to conform to generally accepted standards in the trade and had to be fit for use as a household appliance.

Plaintiffs' evidence allowed the jury to decide that the range failed to conform to generally accepted standards; nor was it fit for use as a household appliance. Both Mr. and Mrs. Walsh testified to a strong odor of gas in their home from the time the range was installed until the explosion. Reproduced Record at 16a, 57a. In the opinion of plaintiffs' expert witness, leaking gas was drawn into the heated oven where it ignited and exploded. Reproduced

Record at 111a–114a.  As the court below stated in its opinion:

> Even though the range may not have been defective for purposes of imposing strict liability under a products liability theory, and even though it may not have been negligently installed, it very obviously leaked gas after the installation and for a period of three (3) years prior to the explosion.  This was evidence sufficient to support a breach of warranty verdict and its weight is for the jury. . . .  The fact that the jury found that the leak was not the result of negligent conduct on the part of the Defendant or that the range was not defective when it left the Defendant's control does not necessarily negate a finding that a leak subsequently developed in the line. Such a leak could reasonably be inferred from the testimony and the verdict winner must be given the benefit of this inference.

Lower ct. op. at 3–4 (citations omitted).

■  As Judge Munley ably stated in the above quoted portion of his opinion, the jury's three special findings [1] were not necessarily inconsistent with each other.  Nor were the findings inconsistent with the general verdict;  the jury found that Company breached an implied warranty of merchantability and accordingly awarded plaintiffs damages. Under these circumstances we believe the trial court correctly refused Company's motions for a new trial or judgment n. o. v.

Judgments affirmed.

1.  It was of course within the discretion of the trial judge whether to permit the submission of special interrogatories to the jury.  As the supreme court said in *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 445–46 n.4, 393 A.2d 1188, 1190 n.4 (1978):

> Generally, a trial judge may grant or refuse a request for specific findings on the basis of whether such would add to a logical and reasonable understanding of the issue.  'To permit the jury to return special findings, where they are unnecessary, can create misleading issues and defeat justice.'  *Greet v. Arned Corporation*, 412 Pa. 292, 297, 194 A.2d 343, 345 (1963).