274 Pa. Superior Ct. 560 (1980)
418 A.2d 548
COMMONWEALTH of Pennsylvania
v.
Joseph WASHINGTON, Appellant.
Superior Court of Pennsylvania.
Argued September 11, 1979.
Filed January 25, 1980.
*562 William Lee Akers, Philadelphia, for appellant.
Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.
Before SPAETH, HESTER and CAVANAUGH, JJ.
CAVANAUGH, Judge:
This is an appeal by Joseph Washington following conviction of two counts of robbery, two counts of simple assault and criminal conspiracy. His post trial motions were denied. Washington alleges six errors on appeal. We find no error and affirm the judgment of sentence.
The Commonwealth's version of the escapade which resulted in the charges against the defendant begins after midnight on June 23, 1978. Appellant Washington and Walter Goodman rang the doorbell at 1721 Bainbridge Street, Philadelphia. Reginald Brown responded, and knowing Washington and Goodman, let them in. Brown resided in the premises with his girlfriend, Kim Tate, and his younger brother Darryl. After some brief conversation in *563 the living room Brown was suddenly faced with three pistols, two in the hands of Goodman and one held by appellant, and told "this is a robbery". A search of the house was begun and the following incidents occurred at various places on the first and second floor of the premises: Reginald Brown was forced to lie on the floor; he was locked in a closet; he was struck in the face with a pistol; his stereo, two televisions and some of his clothing were taken; his car keys were taken and his personal goods were loaded in his car by defendant and Walter Goodman who sought to take the vehicle. Darryl Brown was struck in the face with a pistol and tied to Kim Tate with a telephone cord. Kim Tate, in addition, was taken into a separate room where she was touched on the breasts and vagina by Joseph Goodman. With the exception of the last incident, all events took place with appellant and his confederate working in close concert. The episode ended in the arrest of Goodman and appellant when the police came upon them during their efforts to get Reginald Brown's car started.

I
Error is claimed in the court's permitting police officer Freeman to respond to a question by the district attorney which asked if he had "heard about" a silver plated pistol involved in the robbery before the weapon came into his possession six days after the arrest. Argument is made that the purpose of this question and answer was to show that the pistol (C-2) was in fact used in the robbery, and that it linked the defendant to the firearm.
However, the witness simply stated "yes, I did," that is, that he did hear about a silver plated pistol being used in the robbery without identifying the source or what was said.
The record contains independent proof concerning the pistol and its discovery as follows:
(1) That Officer Freeman received the revolver from Reginald Brown on January 29th (testimony of Officer Freeman).

*564 (2) That the revolver was used during the course of the robbery (testimony of Reginald Brown).
(3) That the revolver was used during the course of the robbery and it was later found in the house underneath the sofa, and given to Reginald Brown, who gave it to the police (testimony of Kim Tate).
The witness' statement merely confirmed what was shown by independent evidence and was harmless beyond a reasonable doubt.

II and III
Contrary to appellant's claim we find no error in the trial court's decision to permit the Commonwealth to show defendant's prior conviction in order to attack his credibility. Com. v. Roots, 482 Pa. 33, 393 A.2d 364 (1978), instructs us as to some of the factors which the trial court should consider in making the determination as to the admissability of a prior conviction for the purpose of impeachment. One of the considerations, crucial here, is whether the prosecution had a "legitimate reason for discrediting [the defendant] as an untruthful person."[1] Here, the defense in the course of cross-examining the chief prosecution witness sought to suggest that he had been engaged in criminal activity by asking if he had sold Walter Goodman some marijuana. He was further asked whether Goodman claimed that the witness "swindled" him. Further, during the Bighum[2] discussion, prior to defendant's testimony, counsel for the defendant stated to the court in summarizing the defense:
Basically, his defense is that this was a disagreement between all of the parties arising out of a business transaction which had gone astray, to which they felt that Mr. Brown had defrauded them. They were there to get solvent rather than to simply take some possessions of Mr. *565 Brown. Basically, that is the defense, what he has indicated to me as to what actually happened.[3]
Thus, it appears that the defense posture was to attack the chief witness for the Commonwealth by accusing him of drug dealing and fraudulent activity which justified defendant and Goodman in taking his possessions from his domicile. In balancing the competing interests of the Commonwealth's right of confrontation with fairness to the defendant, we find that under the circumstances of this trial the balance favors admission of the prior record. In addition, the record is for a robbery and conspiracy to commit robbery and the date of the offense was less than a year before this trial. The defendant was twenty-one years old at the time of the trial. Considering the recent vintage of the prior conviction, the fact that there were two diametrically opposed versions of the events and, that defendant's tactic was to attack the prosecution witness by accusation of criminal activity and fraudulent dealings, it was entirely legitimate to permit the Commonwealth to attack the credibility of the defendant by proof of his recent prior criminal conviction. The decision to permit the use of a defendant's prior criminal record to attack his credibility is one for the sound discretion of the trial judge. We find no abuse of that discretion here.
Nor did the trial court err with respect to defendant's contention that he was denied the right to show that his prior robbery conviction was the result of a guilty plea rather than a trial conviction. Defendant's argument is that he is entitled to show that he is a person who acknowledges wrongdoing. No case has been cited which supports defendant's contention. In Com. v. Snyder, 408 Pa. 253, 182 A.2d 495 (1962), it was held that a conviction based on a plea of nolo contendere had the same effect as a plea of not guilty *566 for impeachment purposes. Moreover, our Court has held that evidence of a prior conviction for impeachment should be limited to the name, time and place and punishment received in the prior offense to minimize the distraction of the issue. Com. v. Jones, 250 Pa.Super. 98, 378 A.2d 471 (1977). Thus, it is the conviction which is relevant to the jury's determination of credibility.
We believe the reception of plea evidence would introduce a collateral issue which could only confuse a jury. The relevance is the former adjudication of guilt upon the acceptance of the plea, and not the reasons for making a plea in the first instance.[4]

IV and V
It is claimed that the trial court erred in permitting Kim Tate to testify that Walter Goodman had touched her on the private parts of her body. It is further claimed that the admission of the evidence was cause for a mistrial. Appellant argues that this evidence was prejudicial to him and was aimed at portraying him as an accomplice to a molester. This argument must fail for a number of reasons. While the particular act was performed not by appellant, but by Goodman, it was not an isolated incident unconnected with the exploit, happening before or after or at another time and place, but rather was part of the res gestae:
The law furnishes no test of relevancy but refers it to logic and general experience and evidence is admissable which tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character. Gregg v. Fisher, 377 Pa. 445, 105 A.2d 105 (1954).
Viewing the testimony in its entirety it was especially relevant to permit the Commonwealth to elicit testimony as to all the events which took place in order to show the character of the visitation by Washington and Goodman. When defendant testified, his version was that they stopped *567 by so that Goodman could purchase marijuana and that the arrest occurred when they were merely helping Reginald Brown to move his possessions since he had decided to move from the premises.
Miss Tate was called in defendant's case, and on direct examination testified only as to the location of telephones in the premises at 1721 Bainbridge Street and thus the argument is made that the testimony concerning her incident with Joseph Washington was beyond the scope of the direct examination. However, no objection was made to the testimony until its conclusion save for two questions which served only to explain testimony already in the record. Evidence in the record without objection, even though technically objectionable may be considered by the jury. Carl v. Kurtz, 255 Pa.Super. 198, 386 A.2d 577 (1978); Rose v. Hoover, 231 Pa.Super. 251, 331 A.2d 878 (1975). A party may not sit by and hear testimony and then object. Evans v. Otis Elevator Co., 403 Pa. 13, 168 A.2d 573 (1961).
Thus, the defendant has waived any right to object to the testimony as beyond the scope of direct testimony. The motion for a mistrial was properly refused since the evidence is relevant and properly admissible.

VI
The jury after deliberating for some time returned to the court room with a two-part query:
"If articles belonging to Reginald Brown were found in the possession of Mr. Goodman, is Joe Washington guilty of robbing Reginald Brown?"
"The question doesn't bear on the evidence, but only on whether the guilt of Mr. Goodman implies the guilt of Mr. Washington with regard to robbery." (n.t. 3-46, 47)
In response the court re-charged the jury and briefly reviewed the law of conspiracy and accomplice liability.
The appellant argues that the question is ambiguous and adds, curiously, that the simple answer should have been "no". He also says that the jury should have been told to limit their deliberations to such evidence as they recalled.
*568 We believe the court's response was correct. The jury obviously wanted guidance in the law of responsibility for the deeds of another actor; its question specifically negated any confusing as to the facts. Where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion. Worthington v. Oberhuber, 419 Pa. 561, 563, 215 A.2d 621 (1966).[5] In Commonwealth v. Fontaine, 183 Pa.Super. 45, 128 A.2d 131 (1956), we said in a case dealing with the trial judge's responsibilities where the jury became confused as to the facts:
When, therefore, such admission is frankly disclosed, the trial court must have discretion in determining how best to resolve the confusion or misapprehension of facts in the minds of the jury. This discretion is an incident to the mode and manner of trial and in the absence of flagrant abuse, should rest with the trial court." 183 Pa.Super. at 47, 128 A.2d at 132.
We think that the same principle applies where, as here, the jury exhibits confusion on the law.[6]
Judgment of sentence affirmed.
SPAETH, J., files a dissenting opinion.
SPAETH, Judge, dissenting:
I disagree with the majority's opinion so far as it concerns the admission of Kim Tate's testimony that Walter Goodman touched her on the private parts of her body.
Under cross-examination by the Commonwealth, Kim Tate testified as follows:
Q. Were you, in anyway, hurt or struck during this incident?

*569 A. No, sir.
Q. Were you touched by anyone during this incident?
A. Yes, sir.
Q. Who touched you?
A. Goodman.
Q. In what room of the house did Goodman touch you?
A. In the back room.
Q. What part of your body did he touch?
A. My breasts and my vagina.
MR. AKERS (Appellant's counsel): Objection.
THE COURT: Overruled.
MR. AKERS: We will ask for a mistrial.
THE COURT: The motion is denied.
N.T. at 143-144 (June 6, 1978).
The majority states that this testimony "was especially relevant to permit the Commonwealth to elicit testimony as to all the events which took place in order to show the character of the visitation by Washington and Goodman." At 551. As the majority notes, relevant evidence is that which "tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character." Gregg v. Fisher, 377 Pa. 445, 454, 105 A.2d 105, 110 (1954). Here, the case turned on whether appellant or Walter Goodman, as appellant's co-conspirator, had committed robbery and various assaults against Reginald and Darryl Brown. Kim Tate's testimony that Goodman touched her private parts in no way advanced the Commonwealth's case. At best, her testimony showed that Goodman had committed indecent assault, a crime for which neither Goodman nor appellant had been charged. At worst, her testimony was highly prejudicial.
The majority's own statement shows how highly prejudicial Kim Tate's testimony was. The majority says that the testimony "show[ed] [the] character" of "the visitation between the parties." Thus the majority holds against appellant the fact that Goodman committed indecent assault on *570 Kim Tate; in its eyes, the "character" of "the visitation" was not that appellant and Goodman set out to commit a robbery but that they set out to commit a robbery and, while they were at it, indecent assault, should the opportunity for indecent assault arise. That is an inflammatory view of the case. So far as Goodman is concerned, it may well be justified; but as to appellant, it is not, for nothing in the evidence supports a finding that appellant either anticipated or had anything to do with Goodman's assault on Tate. If an appellate judge, on a cold record, is prejudiced against appellant because of Tate's testimony, one may feel some assurance of the prejudicial effect of the testimony when given live.
Nor do I agree with the majority that appellant waived his objection to Kim Tate's testimony. The record shows that appellant did not object to the first few questions relating to Goodman's actions against Kim Tate. It was not apparent that those questions were intended to elicit irrelevant and prejudicial testimony. As soon as it became clear that the testimony would be both irrelevant and highly prejudicial, appellant objected to it.
Nor was the lower court's error in overruling appellant's objection harmless. In Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155 (1978), the Supreme Court stated the test for whether the admission of inadmissible evidence could constitute harmless error:
The uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.
476 Pa. at 417, 383 A.2d at 168.
Here, there was considerable dispute between the Commonwealth's witnesses and appellant as to the circumstances of the robbery and assaults.
I should grant appellant a new trial.
NOTES
[1] 482 Pa. at 40, 393 A.2d at 367.
[2] Com. v. Bighum, 452 Pa. 554, 307 A.2d 255 (1973) which mandates a determination by the court as to the permissibility of using prior convictions to attack the credibility of the defendant.
[3] Defendant chose to testify after the court ruling permitting the use of the prior record. The gist of his testimony which was relatively brief made no mention of a business transaction gone astray or an attempt to get "solvent". However, the trial judge must necessarily make his ruling before the testimony so that the defendant may make his decision whether or not to testify. There is no claim here that counsel's summary of the defense was unauthorized or inaccurately stated.
[4] See Com. v. Henson, 269 Pa.Super. 314, 409 A.2d 906 (1979), which illustrates the confusion which may arise where there is evidence of the type of plea prior to the conviction.
[5] See also, Commonwealth v. Ware, 137 Pa. 465, 479, 20 A. 806 (1890).
[6] See Reilly v. Poach, 227 Pa.Super. 522, 323 A.2d 50 (1974), where this Court specifically noted that the jury's confusion could best be cured by re-reading a portion of the charge.