518 A.2d 563

**Edward SCARBOROUGH Minor by his Parent and Natural Guardian Patricia SCARBOROUGH and Patricia Scarborough in her own right**

v.

**Andrew L. LEWIS and Joseph L. Castle, Trustees for Reading Co.**

v.

**CITY OF PHILADELPHIA.**

Superior Court of Pennsylvania.

Argued April 10, 1986.

Filed Nov. 28, 1986.

Barbara Axelrod, Deputy City Solicitor, Philadelphia, for appellant (at 1053) and for appellee (at 1054).

E. Parry Warner, Philadelphia, for appellants (at 1054) and for appellees (at 1053)

James E. Beasley, Philadelphia, for appellees.

Before CIRILLO, President Judge, and ROWLEY and WIEAND, JJ.

CIRILLO, President Judge:

This case involves consolidated appeals from an order of the Court of Common Pleas of Philadelphia County, sitting en banc, denying the post-trial motions of appellant, City of Philadelphia (hereinafter "City"), and appellants, Andrew L. Lewis and Joseph L. Castle, trustees for the Reading Company (hereinafter referred to collectively as "Reading").

Appellees, Edward Scarborough and his mother, Patricia Scarborough, instituted this action in 1976 against Reading

to recover for personal injuries sustained by Edward in a railroad train accident which occurred in 1974. Reading joined the City as an additional defendant and the case proceeded to a jury verdict in favor of the Scarboroughs and against both defendants.

The facts may be summarized as follows. On June 24, 1974, Edward Scarborough, then nine years of age, was playing basketball at the end of a dead-end street owned and maintained by the City. The ball rolled through a hole in the fence and continued down an embankment which lead to a right of way and then to railroad tracks owned and operated by Reading. There was a path leading down the slope toward the tracks. Edward climbed or slid through the hole in the fence and followed the ball down the embankment. As he was going to retrieve the ball, Edward heard a train passing by. Edward retrieved the ball and carried it back to the fence, but then turned and walked back down the embankment. Edward boarded a moving train car and rode for a minute or two. Edward attempted to jump off the train, but fell underneath the wheels. Both of Edward's legs were amputated.

On appeal, both Reading and the City argue that the appellees failed to establish a legally cognizable cause of action and that judgment n.o.v. should have been granted. In addition, the City raises numerous issues in support of its argument that a new trial must be granted and, alternatively, argues that the verdict was excessive and that delay damages were improperly imposed. We will consider each appeal separately.

## I. *The City's appeal*

We first consider the City's contention that it was entitled to judgment n.o.v. As stated by our Court in *Walsh v. Pennsylvania Gas and Water Company*, 303 Pa.Super. 52, 58, 449 A.2d 573, 576 (1982):

> In reviewing the denial of a motion for judgment N.O.V., the evidence together with all reasonable inferences therefrom must be viewed in a light most favorable to the

verdict winner; all conflicts in the evidence are resolved in favor of the prevailing party. *See Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979); *Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980). Evidence supporting the verdict is considered and the rest rejected. *Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968). As we said recently, "A judgment notwithstanding the verdict should be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper...." *Martin v. Soblotney,* 296 Pa.Super. 145, 442 A.2d 700 (1982).

■ In its appellate brief, the City argues that the Scarboroughs failed to present a legally cognizable cause of action because, as a matter of law, the City as a property owner owes no duty to those who cross its land and are subsequently injured by a dangerous condition on the property of another. We hold that issues relating to the nature and source of the common law duty owed by the City to Edward Scarborough are not preserved for our review.

Our review of the record reveals that the City failed to present argument in its post-trial brief concerning the source, existence, or nature of the duty owed by the City to Edward Scarborough. Instead, the City's post-trial brief addresses the issue of the existence of a *causal connection* between Edward's injuries and the City's breach of some unspecified duty.[1] The existence of that duty, for the purposes of the City's post-trial brief, was apparently considered a foregone conclusion.[2] In our view, the City's failure to brief the critical duty issue at the close of the proceedings deprived the trial court of both the need and opportunity to address the merits of the City's post-trial

[1] The City presents no argument on appeal regarding the issue of a causal connection between the hole in the fence and Edward's injury.

[2] The City's failure to address the duty issue in its post-trial brief may offer some explanation for the trial court's failure to include "... one word in [its] Opinion explaining why or how [Restatement Second, Torts] Section 339, or any other provision of the Restatement applies to the City." Brief for appellant, City of Philadelphia at 18.

contentions in this regard. Thus, we conclude that the common law duty issues, as raised now by the City on appeal, are waived and may not serve as a basis for relief.[3]

■ Moreover, even if the City's common law duty arguments were properly preserved for our review, it is clear that such arguments would afford no basis for reversal of the trial court's refusal to grant the City's motion for judgment n.o.v. The City argues that its liability could not have been premised upon Section 339 of the Restatement (Second) of Torts inasmuch as the train was not located on the City's land and the City was not in possession or control of the right-of-way.[4] We agree. *Kearns v. Rollins Out-*

3. See generally *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974); *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); see also *Commonwealth v. Dessus*, 262 Pa.Super. 443, 396 A.2d 1254 (1978) (issue abandoned when not briefed for lower court but raised on appeal as an afterthought); *Schneider v. Albert Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978) (issue waived when raised in post-trial motions but not briefed or argued before trial court); *Commonwealth v. Prisznyak*, 306 Pa.Super. 137, 452 A.2d 253 (1982) (failure to brief or argue issues raised in post-verdict motions results in waiver of issues on appeal); *Equipment Finance v. Toth*, 328 Pa.Super. 351, 476 A.2d 1366 (1984) (failure to argue or brief issues raised in post-trial motions results in waiver of issues and would not form basis of appeal to reviewing court); *Bell v. City of Philadelphia*, 341 Pa.Super. 534, 491 A.2d 1386 (1985) (issue not argued in brief filed in trial court was not preserved for appellate review); *Cherry v. Willer*, 317 Pa.Super. 58, 463 A.2d 1082 (1983); *Richardson v. LaBuz*, 81 Pa.Cmwlth. 436, 474 A.2d 1181 (1984).

4. Restatement (Second) of Torts § 339 provides as follows:
§ 339. Artificial Conditions Highly Dangerous to Trespassing Children
A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

*door Advertising, Inc.,* 89 Pa.Commw. 596, 492 A.2d 1204 (1985); *Cousins v. Yeager,* 394 F.Supp. 595 (E.D.Pa.1975). However, it is clear that the trial court also agreed with this statement of law, and, in accordance with the City's request, specifically charged the jury to that effect. Indeed, the trial court carefully limited the applicability of Section 339 to the issue of Reading's liability:

> Now, members of the jury, a possessor of land—and in this case the railroad possessed the land on which their tracks were, the embankment in this case; the City was the possessor of the bed of 13th Street—but this I am telling you with regard to the issue with regard to the railroad. A possessor of land is subject to liability for physical harm to children trespassing thereon, even though they are trespassing, there is still liability with regard to children trespassing thereon caused by an artificial condition upon the land, if all of the following requirements or conditions are met. That is, the plaintiff under this theory must prove all of the following five conditions in order to prove that the Reading Company was negligent, even though he was a trespasser. Remember, I told you hopping on the train would be a trespasser. These would be your five conditions ...
>
> ....
>
> Under Pennsylvania law, the attractive nuisance doctrine does not extend to impose liability on landowners for conditions which exist on an adjoining third party's property. That is correct and affirmed for our purposes. Under Pennsylvania law, a defendant who owns land adjacent to a railway has no duty to erect a fence or other protective devices or to provide warnings to protect children who live or play on its land.
>
> Under the law in Pennsylvania, a landowner is under no duty to a person who passes over his land as to a possible

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

dangerous condition on the land of another. That is the law of Pennsylvania.

In light of the above, it is obvious that the City's liability was not premised on Section 339. Therefore, even if this argument had been preserved, the City is without cause to complain on appeal that the trial court erred in refusing to grant judgment n.o.v. based upon the inapplicability of Section 339.

■ Similarly, we are not persuaded by the City's argument that judgment n.o.v. should have been granted because a duty to erect the fence was improperly imposed upon the City. It is well settled that the law imposes no duty upon a possessor of adjacent land to *erect* fencing or provide warnings so as to deter persons from entering a third party's property. *Kearns v. Rollins Outdoor Advertising, Inc., supra; Magner v. Baptist Church,* 174 Pa. 84, 34 A. 456 (1896); *Heller v. Consolidated Rail Corporation,* 576 F.Supp. 6 (E.D.Pa.1982), *aff'd* 720 F.2d 662 (3d Cir. 1983); *Cousins v. Yeager,* 394 F.Supp. 595 (E.D.Pa.1975). Indeed, as the City aptly points out, it would be incongruous to impose such a duty upon adjacent landowners when no such duty is imposed upon the owner of the land in which the dangerous condition exists. It has long been held that a railroad has no duty to erect fences on its right of way to deter trespassers. *Dugan v. Pennsylvania R.R. Co.,* 387 Pa. 25, 127 A.2d 343 (1956); *Malischewski v. Pennsylvania R.R. Co.,* 356 Pa. 554, 52 A.2d 215 (1947). However, this argument is of no moment in the instant appeal. A review of the record reveals that, again, the trial court *agreed* with these statements of law and, again, charged the jury to that effect in accordance with the City's request. (*See* above quoted portion of the trial court's charge). Thus, the City is without cause to complain that a duty to erect fences or install warnings was somehow imposed upon it. In addition to not being preserved for our review, the City's argument that it was entitled to judgment n.o.v. on this basis is without merit.

The City may have had cause to complain on appeal that its duty *was* premised upon Section 323 of the Restatement (Second) of Torts.[5] With respect to this theory of liability, the trial court charged the jury as follows:

> If, having undertaken to maintain the fence there was a failure to exercise reasonable care, and if harm is suffered because of the other's reliance upon that undertaking, then there may be responsibility and liability.

> If you find that the City undertook to erect or maintain a fence at the end of 13th and McFerran Streets, you may then find that there was an obligation to maintain that fence properly; that is without holes, as is contended by the plaintiff.

The City failed to object to the trial court's Section 323 charge beyond requesting a supplementary instruction that there was no evidence that Edward relied upon the fence to keep him off the tracks. Such an instruction was given. The issue of the trial court's application of Section 323 to the facts of the instant case was not addressed in the City's post-trial brief and has not been pursued on appeal. Therefore, we need not and will not consider it. We offer no opinion on the question of whether the gratuitous erection of a fence or other protective device by a possessor of land adjacent to a dangerous condition or instrumentality gives rise to liability under Section 323 when a person is injured by that condition or instrumentality as a result of a failure to properly maintain the fence or device. *See Hayes v. Philadelphia Electric Co.*, 92 Pa.Commw. 205, 212, 498 A.2d 1019, 1023 (1985) (Kalish, S.J., dissenting).

**5.** Restatement (Second) of Torts § 323 provides as follows:
> § 323. Negligent Performance of Undertaking to Render Services
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

■ The City's final judgment n.o.v. argument concerns the trial court's treatment of a Philadelphia Police Department directive issued by the Police Commissioner prior to Edward's injury. This is the only judgment n.o.v. argument presented by the City that is properly preserved for our review. We find it to be without merit.

Police Directive 38 was issued by the Police Commissioner and directed police officers to report dangerous conditions on City property. At trial, the City sought to preclude the use of Directive 38 through a motion in limine. The City also moved for a nonsuit and a directed verdict, contending that the City's alleged failure to comply with the Directive was not in itself actionable. At the close of trial, the City requested binding instructions and points for charge to the effect that the Directive could not form a basis for a finding of liability against the City. As noted by the City in its appellate brief, the trial court "charged the jury in accordance with the City's Binding Instructions." Brief for Appellant, City of Philadelphia, at 7. The record reveals that the trial court specifically and correctly instructed the jury that the Scarboroughs could not recover against the City for failure to provide police protection absent some breach of a duty owed to Edward in his *individual* capacity, and not merely a breach of an overall obligation to the general public.[6] In light of this, it is clear that the jury's determination of the City's liability could not have been improperly premised upon a duty created or undertaken by the promulgation of Police Directive 38. Therefore, the City is not entitled to judgment n.o.v. simply because the Scarboroughs failed to plead or prove a cause of action based on Directive 38.[7]

We next consider the City's contention that the trial court improperly denied its motion for a new trial. Initially, we

6. See generally *Melendez by Melendez v. City of Philadelphia*, 320 Pa.Super. 59, 466 A.2d 1060 (1983).

7. The record reveals that Directive 38 was admitted as evidence of the standard of care with regard to the inspection and maintenance of City property. The propriety of the trial court's admission of the Directive into evidence is not challenged on appeal.

reiterate the well established rule regarding the circumscribed scope of appellate review applicable to a trial court's order granting or denying a new trial. The grant or denial of a new trial will not be subject to reversal on appeal absent either an error of law which controlled the outcome of the case, *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 163, 494 A.2d 1088, 1093 (1985) *citing Anzelone v. Jesperson*, 436 Pa. 28, 258 A.2d 510 (1969); *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 229 A.2d 861 (1967), or a palpable abuse of discretion when the ruling turns on the weight of the evidence. *Martin v. Johns-Manville, supra, citing Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 367–68, 263 A.2d 432, 436 (1970).

The City raises numerous issues in support of its contention that a new trial must be granted. Our consideration of just one of these issues leads us to the conclusion that a new trial is required.[8]

The issue of Edward Scarborough's contributory negligence was, obviously, a critical one at trial. Pursuant to then existing law, the trial court charged the jury that Edward could not recover if the jury found that Edward was contributorily negligent in boarding the train and that such negligence was a substantial factor in bringing about his injuries. The court further charged that a child is "held to that measure of care and caution and discretion which other children of the same age, experience, intelligence, capacity and development would ordinarily exercise." [9] The

8. In light of our determination of this single new trial issue, it is unnecessary to consider the remainder of the City's new trial issues or to determine which of those issues, if any, have been preserved for appellate review. Likewise, we need not consider the City's contentions that the trial court improperly awarded delay damages or that the verdict was excessive.

9. Substantial evidence was introduced at trial concerning the extent to which Edward realized that he could be seriously injured by boarding moving trains. The evidence adduced at trial concerning the issue of Edward's contributory negligence included (1) testimony that Edward's cousin had previously lost a leg in a similar accident and that the cousin had lived with the Scarboroughs for some time after losing his leg; (2) Patricia Scarborough's deposition testimony that "Eddie knew at a young age what the train could do to him;" and (3)

court also instructed, at three separate points in its charge, that Edward was a trespasser when he boarded the train.

During its deliberations, the jury returned with the following request: "Additional instructions. What constitutes 'responsible care' on the part of a child aged 7 to 14 according to law—i.e., is the responsibility of the child at this age to know what constitutes trespassing?"

Upon receipt of the jury's request, the trial judge and counsel for all parties convened for an in-chambers colloquoy. The trial court acknowledged that the jury's question was susceptible to at least two meanings.[10] Counsel for the Scarboroughs suggested that the court's answer should be "no," arguing that the jury was simply asking whether a seven to fourteen-year old child should know what trespassing is. Counsel for the City disagreed and argued that "the concept of trespassing goes into the concept of whether or not the child knows at his age he is doing something he should not be doing, in that it is something that could possibly hurt him." The City further argued that while a child may not know what the actual term "trespasser" means, a child "knows where it should not be." Finally, the City argued that a simple "no" answer would not suffice because the court, in its charge, used the term "trespassing" as a correlative to boarding the train. Likewise, counsel for Reading argued that "the answer is that it's his responsibility to know about trespassing whatever a reasonably careful child the same age, experience, et cetera, should know about that."

The trial judge concluded the colloquoy and addressed the jury as follows (emphasis supplied):

Members of the jury, when you address a deliberating jury, it is my desire to say as little as possible for your

Edward's testimony that he knew his mother would have disapproved of his entrance onto the right-of-way and would have given him a "whipping" had she found out about it.

10. During the in-chambers colloquoy, the trial judge stated as follows:
 THE COURT: I don't think any of you ought to miss the possible double-barrelled meaning of the question. Think about the question.

consideration, so that I don't confuse you or lead you into other fields.

You have asked me the following question: "What constitutes 'responsible care' on the part of a child aged 7 to 14 according to law?" That is, that's what you "i.e." is, "Is it the responsibility of the child at this age to know what constitutes trespassing?"

*My answer to you is "no." The word trespassing is a legal word.*

Does that answer your question?

(All jurors answered affirmatively.)

Now, have I answered you sufficiently so that you are satisfied to proceed with your deliberations?

(Whereupon all jurors answer affirmatively.)

The law uses the term to describe differences of certain people. Are you satisfied with my additional instructions?

(Whereupon all jurors answer affirmatively.)

In considering the sufficiency and effect of the trial court's response to the jury's request for additional instructions we are guided by several well settled principles. First, it is basic to a fair trial that the trial judge clearly define the issues in order that the jury may have an intelligent understanding of those cases. *Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963). Indeed, our courts have long recognized that the primary duty of a trial judge in charging a jury is to clarify the issues so that the jurors may comprehend the questions they are to decide. *Smith v. Clark, supra; Bromberg v. Gekoski,* 410 Pa. 320, 189 A.2d 176 (1963); *Hodgson v. Bigelow,* 335 Pa. 497, 7 A.2d 338 (1939); *Wood v. Smith,* 343 Pa.Super. 547, 495 A.2d 601 (1985). Absent clarification of the issues and the application of the law to the facts, a fair trial is not present. *Smith v. Clark, supra.* .

██ Second, while there may be situations in which a trial judge may decline to answer questions put by the jury, when a jury returns on its own motion indicating confusion,

the trial court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion. *Worthington v. Oberhuber*, 419 Pa. 561, 563, 215 A.2d 621 (1966). In order to obtain a new trial based on the trial court's treatment of the jury's question, the moving party must demonstrate in what way the trial error caused an incorrect result. *Nebel v. Mauk*, 434 Pa. 315, 253 A.2d 249 (1969). To carry its burden of showing a causal connection between the error and the result, the moving party must show at least a *"substantial possibility* of an incorrect result after consideration is given to the particular facts of the case in question, with attention also to the nature of the response required to answer the particular question put to the judge." *Reilly v. Poach*, 227 Pa.Super. 522, 525 at Note 2, 323 A.2d 50, 52 at Note 2 (1974) (emphasis supplied). Finally, when a jury's confusion or misapprehension is disclosed, the trial court must have discretion in determining how best to resolve the confusion or misapprehension. " 'This discretion is an incident to the mode and manner of trial and in the absence of flagrant abuse, should rest with the trial court.' " *Commonwealth v. Washington*, 274 Pa.Super. 560, 568, 418 A.2d 548, 552 (1980) *quoting Commonwealth v. Fontaine*, 183 Pa.Super. 45, 47, 128 A.2d 131, 132 (1956). The above stated principles apply when the jury exhibits confusion as to the facts *or* the law. *Commonwealth v. Washington*, *supra.*

Applying the above principles to the instant case, we find: (1) the jury did not fully comprehend the issues it was directed to resolve; (2) the trial court's response did little or nothing to clarify the confusion evidenced by the jury's question; (3) the jury's failure to comprehend, coupled with the trial court's response, created at least a substantial possibility that an incorrect result was obtained; (4) the trial court's response constitutes reversible error; and (5) the trial court abused its discretion in refusing to grant a new trial. Accordingly, we reverse the order of the trial court and remand this case for a new trial.

■ We agree with the City and the trial judge's assessment that the jury's question carried, at least, a "double barreled" meaning. Indeed, the jury's question is reasonably susceptible to several interpretations, for example: (1) "Does a child's ability to know that he is in a place where he does not belong constitute a factor in deciding whether that child had the capacity and intelligence to appreciate the danger involved and then conduct himself accordingly?" or, (2) "As a matter of law, must a seven to fourteen-year old be capable of understanding the *concept* of trespassing before he may be contributorily negligent?" or, (3) "Must a child be able to *define* the actual word "trespassing" in its legal sense before he may be contributorily negligent?" or, (4) "How does a child's ability to understand his status as an entrant on land impact upon our application of the applicable standard of care?" or, (5) "What is the standard of care for a child of this age?" It is precisely because of this "double barreled" or multiple meaning that the trial court's answer could not suffice as a response to the jury's request for additional instructions.

We believe that the trial court's supplemental instruction allowed and invited the jury to do more than merely conclude that a seven to fourteen-year old child is not charged with the responsibility of successfully defining or understanding the actual term "trespassing" as a "legal word". The instruction created a substantial possibility that the jury would draw the alternate and incorrect conclusion that a child of that age may never be held capable of understanding the *concept* of trespassing. Under the circumstances, such a misapprehension on the part of the jury could have been fatal to the issue of contributory negligence inasmuch as it is reasonably apparent from the two part question that the jury had somehow drawn a connection between (1) the child's responsibility and ability to understand trespassing, and (2) the child's exercise of "responsible care." Thus, the incorrect conclusion (that a child of like age is never charged with the responsibility of understanding "trespassing" as a concept) quite possibly led to the equally incorrect conclusion that such a child

cannot be contributority negligent. The trial court recognized the dangerous and dual nature of the question, but either ignored or failed to recognize the broader implications of the question or the chosen response. In so doing, the trial court breached its primary duty of clarifying the issues so that the jury could comprehend the questions it was directed to resolve. *See Reilly v. Poach, supra* (reversible error when refusal to clarify or reinstruct could easily cause the jury to apply wrong standard of care).

Moreover, even if the court's narrow answer to the second half of the jury's question was correct in a technical sense, the trial court failed to clarify or address the broader issue presented in the first half of the jury's question. The first half clearly represents a request for *additional instructions* regarding the crucial issue of "[w]hat constitutes responsible care on the part of a child aged 7 to 14 according to law ..." By its very nature, the jury's request evidenced at least the substantial possibility of confusion or misunderstanding with respect to the applicable standard of care as it related to the contributory negligence issue. Therefore, under the particular facts of this case, it was incumbent upon the trial court to clarify the issue. We believe that the court could easily have accomplished this, without alluding to the facts of the case and without prejudice to any party, by summarizing or even repeating its original substantive instructions on the issues of contributory negligence and the standard of care.

The Scarboroughs argue that resolution of the issues raised by the jury's request could not have affected the issue of the City's liability inasmuch as Edward's legal status as an entrant upon land related only to the scope of *Reading's* duty under Restatement Section 339. We disagree. To the contrary, it is apparent that the jury somehow entwined the issue of Edward's trespasser status with the issue of "responsible care" and, *a fortiori,* with the issue of Edward's contributory negligence.

■ The Scarboroughs adopt the trial court's citation of *Link v. Highway Express Lines, Inc.,* 444 Pa. 447, 282 A.2d

727 (1971) for the proposition that a trial court's actions cannot be erroneous when the judge correctly answers a jury's question based on the judge's assumption of the meaning of the question. We consider this an overly broad reading of that case. *Link* does not stand for the proposition that, in all cases, there is no error when the judge correctly answers a question based on his or her assumption of the meaning of the question. First, there is no indication that the appellants in *Link* challenged the soundness of the trial court's basic assumption. Here, the trial judge's assumption is vigorously challenged. Second, such a broad reading of *Link* ignores the primary duty of the trial court which, as stated previously, is to clarify the issues. Moreover, it would appear that the decision in *Link* turned at least in part on the appellants' tacit agreement to the judge's answer prior to its submission to the jury. *Id.*, 444 Pa. at 450, 282 A.2d at 729. No such agreement is evident here.

■ In its opinion, the trial court attaches great significance to the jury's repeated indications of satisfaction with the judge's "additional instructions." However, we fail to see how the jury's expression of satisfaction with the trial court's response is in itself dispositive of the issue at hand. The question is not merely whether the jury was "satisfied," but whether the trial court erred by failing to clarify the issues so as to avoid the substantial possibility of an incorrect result. Here, we believe that the trial court's supplemental instruction did little to clarify the issues and instead made an incorrect result substantially possible, if not probable. Accordingly, we remand for a new trial.

## II. *Reading's appeal*

Reading argues that it was entitled to judgment n.o.v. because, in its view, the Scarboroughs failed to establish a cause of action under Section 339 of the Restatement (Second) of Torts, or under applicable principles of common law

negligence relating to permissive railroad crossings. We agree.[11]

 Assuming *arguendo* that Section 339 is applicable to a case involving a moving train on a right of way, it is quite clear that our Supreme Court's holding in *Dugan v. Pennsylvania Railroad Co.*, 387 Pa. 25, 127 A.2d 343 (1956) precludes recovery under Section 339 in this case. In order to establish a cognizable cause of action for negligence under Section 339, a plaintiff must satisfy each of that section's five specific requirements. Subsection (d) requires proof that the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight compared with the risk to the children involved. In *Dugan, supra,* our Supreme Court held on similar facts that the requirements of subsection (d) had not been satisfied as a matter of law, and quoted with approval the following comment to subsection (d):

> The comment in § 339 makes this explanation of clause (d): "In determining whether a particular condition maintained by a possessor upon land which he knows to be subject to the trespasses of children involves an unreasonable risk to them, the comparison of the recognizable risk to the children, with the utility to the possessor of maintaining the condition, is of peculiar importance. The public interest in the possessor's free use of his land for his own purposes is of great importance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which would be obviated *without any serious interference with the possessor's legitimate use of his land.*"

*Id.,* 387 Pa. at 32–33, 127 A.2d at 347. (Emphasis in original). We hold, in accordance with *Dugan,* that the utility of railroad operations and the public interest in the Railroad's free use of the right of way outweigh the risk

11. Neither the Scarboroughs nor the City present arguments on appeal in opposition to Reading's demand for judgment n.o.v. The Scarboroughs and the Reading Company entered into a tortfeasor settlement and release on October 13, 1982.

involved. Further, as did the Court in *Dugan, supra,* we hold that the risk involved, although grave, could not have been obviated without serious interference with the Railroad's legitimate use of the right-of-way.

[11] In its opinion, the trial court attempted to avoid the obvious impact of *Dugan* on Reading's liability by characterizing the *fence* as the dangerous artificial condition for Section 339 purposes as opposed to the moving train itself. Such a characterization is patently erroneous. First, as stated previously, it is well settled that a railroad has no duty to fence its right-of-way to prevent trespassing by children. *See Dugan, supra; Malischewski v. Pennsylvania Railroad Co., supra.* Second, Section 339 applies to artificial conditions "upon the land" of the party against whom recovery is sought and not, as here, to artificial conditions on the land of adjacent property owners. We will not burden this discussion with further consideration of this point.

We next consider whether the Scarboroughs established a cognizable cause of action under their second theory of liability against Reading. The Scarboroughs contended that the accident site was a permissive crossing and that Reading was negligent in failing to keep a proper lookout.

■ In a permissive crossing situation, a railroad's duty consists of (a) keeping a lookout to see if persons are using the permissive crossing, (b) warning users of the train's approach, and (c) taking action to stop the train before reaching the permissive crossing if persons are using it. *Figard v. Pennsylvania Railroad Co.,* 361 Pa. 380, 65 A.2d 411 (1949). However, once a train reaches and enters the permissive crossing, its presence is sufficient warning to persons intending to use it, and no further action by the railroad is necessary. *Cella v. Pennsylvania Railroad,* 364 Pa. 82, 70 A.2d 638 (1950); *Hogg v. Bessemer,* 373 Pa. 632, 96 A.2d 879 (1953); *Yazvac v. Baltimore and Ohio Railroad,* 342 F.Supp. 161 (W.D.Pa.1972). Applying these principles to the facts of the instant case, it is clear that the Scarboroughs failed to establish a cognizable cause of ac-

tion based on common law negligence and the doctrine of permissive crossings.

First, our review of the evidence adduced at trial convinces us that the area in question was not a permissive crossing as the Scarboroughs now contend. Therefore, the above enumerated duties have no application in the instant matter. Second, assuming *arguendo* that the area was a permissive crossing, the record clearly establishes that the train entered and began passing through the area *before* Edward approached the moving train from his position near the fence. Thus, there was no duty owed by the Railroad to Edward at the time in question. Finally, Edward's own testimony establishes that he never intended to *cross* the tracks, but rather to leap aboard the moving train. Therefore, in any event, Edward was not a permissive crosser, and a theory of liability based upon the doctrine of permissive crossings is wholly inapplicable.

The Scarboroughs failed to establish a legally cognizable cause of action based upon Section 339, Restatement, Second, Torts, or upon common law negligence principles. Therefore, we reverse the order of the trial court insofar as it dismissed Reading's motion for judgment n.o.v.

Order reversed as to appellants Castle and Lewis. Order denying appellant City of Philadelphia's motion for judgment n.o.v. affirmed. Order denying appellant City of Philadelphia's motion for new trial reversed. Remanded for new trial. Jurisdiction relinquished.

WIEAND, J., dissents.

WIEAND, Judge, dissenting:

In this case involving serious injuries to a nine year old boy who jumped from a moving railroad car which he had "hopped" a short time before, the majority has granted a new trial with respect to the verdict against the City of Philadelphia. In my judgment, the evidence failed to establish that the City of Philadelphia was legally responsible for this unfortunate accident. I conclude, therefore, that a

judgment n.o.v. should have been entered in favor of the City.

On June 4, 1974, nine year old Edward Scarborough sustained severe leg injuries when he jumped from a moving railroad car which he had boarded while playing upon property owned by the Reading Company. The boy had gained access to the railroad tracks by climbing through a hole in a chain link fence which had been installed by the City of Philadelphia at the end of Thirteenth and McFerran Streets. Edward's mother, Patricia Scarborough, commenced an action in trespass on behalf of her son and in her own right against Andrew L. Lewis and Joseph L. Castle, trustees of the Reading Company, alleging Reading's negligence in its operation of the train and in its failure to take adequate measures to prevent the minor plaintiff from gaining access to the railroad tracks. Thereafter, the City of Philadelphia was joined as an additional defendant on grounds that it had failed to keep the fence in repair and had thereby breached a duty owed to the minor to protect him from the dangerous condition created by the movement of trains on the railroad's property.

Throughout the trial, the City contended that the law did not impose upon it a duty to protect the minor plaintiff from dangerous activities being conducted on land owned by another. The City moved for a compulsory non-suit at the close of the plaintiffs' case, but the motion was summarily denied by the trial court. After both parties had rested, the City moved for a directed verdict. This was also denied. The City also submitted points for charge requesting the trial court to instruct the jury that the City owed no duty to repair defective conditions maintained on property not owned by the City or to protect citizens from dangerous activities conducted on private property by other persons. The alleged failure of the evidence to establish a legally cognizable cause of action against the City was again raised by the City in a post-trial motion for judgment n.o.v. Finally, whether the City breached a duty owed to the minor plaintiff and thereby became liable to him for injuries

sustained while playing upon the railroad's land, has been argued on appeal in this Court. It appears, therefore, that the City has raised the alleged nonexistence of a legally cognizable cause of action against it at every opportunity. The nature of the City's duty, therefore, is an issue which has not been waived but which has been preserved for appellate review and which deserves our attention. Because the majority holds otherwise, I respectfully dissent.

As a general rule, a municipality has no duty to erect a fence to deter persons on the streets of the municipality from entering adjacent property. *Kearns v. Rollins Outdoor Advertising, Inc.*, 89 Pa.Cmwlth. 596, 492 A.2d 1204 (1985). The law has not imposed upon a municipality a duty to erect fencing or other protective devices to deter trespassing children from entering the property of a third person and there encountering a dangerous condition not created or maintained by the municipality and over which it has no direct control. *Kearns v. Rollins Outdoor Advertising, Inc., supra.* See also: *Heller v. Consolidated Rail Corp.*, 576 F.Supp. 6 (E.D.Pa.1982), *aff'd*, 720 F.2d 662 (3d Cir.1983); *Cousins v. Yaeger*, 394 F.Supp. 595 (E.D.Pa. 1975). Indeed, "[t]he imposition of a duty to fence one's land which adjoins a railroad right of way would ... produce an incongruous result since the Pennsylvania cases hold that there is ordinarily no duty on a railroad to fence its right of way to prevent children from trespassing." *Id.* at 605.

It was contended by the plaintiffs, however, that when the City undertook to erect a fence at the end of its street, it thereby became liable if a child were causally injured because of the City's failure thereafter to keep the fence in repair.[1] Specifically, plaintiffs relied upon Section 323 of

---

1. The plaintiffs also contended at trial that the City should be held liable because the city police, by failing to discover, report or repair the defect in the fence at the end of Thirteenth and McFerran Streets, had breached their duty to protect Edward Scarborough from the dangers which awaited him on the property owned by the railroad. The law is clear, however, that police owe no duty to provide protection to any particular member of the public absent the existence of a "special relationship" between that individual and the police. See:

the Restatement (Second) of Torts, which provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

This section recognizes that liability for harm resulting from the failure to exercise reasonable care may result where (1) the failure to exercise reasonable care has increased the risk of harm or (2) the harm is suffered because of the other's reliance upon the undertaking. In the instant case, however, neither of these elements was established by plaintiffs' evidence.

There was no proof that the City's failure to repair the hole in the fence *increased* the risk that children such as

*Melendez v. City of Philadelphia*, 320 Pa.Super. 59, 466 A.2d 1060 (1983); *Chapman v. City of Philadelphia*, 290 Pa.Super. 281, 434 A.2d 753 (1981). See also: 57 Am.Jur.2d § 251. Such a relationship will be found to exist only where the police are aware of the precise danger facing that individual and they undertake to protect him or her from that specific harm. *Melendez v. City of Philadelphia, supra*, 320 Pa.Superior Ct. at 65, 466 A.2d at 1063–1064. In the instant case, there was no evidence that a special relationship had existed between the minor plaintiff and the Police Department of the City of Philadelphia.

The plaintiffs argued that such a duty had been created by Police Directive 38. This argument lacks merit. A municipal corporation is not liable in damages for the negligent execution and enforcement of its ordinances by its police officers. *Wecksler v. City of Philadelphia*, 178 Pa.Super. 496, 501, 115 A.2d 898, 900 (1955). See: 57 Am.Jur.2d *Municipal, School, and State Tort Liability*, §§ 113, 114; 63 C.J.S. *Municipal Corporations*, § 769. Likewise, it will not be subject to liability for negligent enforcement of police regulations. See: *Id.* § 775 (The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public. A city is not liable, therefore, for the acts of its officers in attempting to enforce such regulations).

Edward Scarborough would enter the railroad yard and be injured by a moving train. At the very worst, the City's failure to repair the fence created the *same* risk of children entering upon the railroad tracks as would have existed if the City had not undertaken to erect and maintain the chain link fence at the end of the street. Moreover, the evidence established clearly that the harm to the Scarborough boy did not result from his reliance upon the City to maintain the fence. Children in the neighborhood had placed a backboard and basket at Thirteenth and McFerran Streets. Scarborough had been playing there on June 24, 1974, when the basketball rolled through the fence and down an embankment to the railroad tracks of the Reading Company. He followed the ball, retrieved it, and returned it to the top of the embankment. Because he heard a moving train, he then descended to the tracks once again, where he jumped aboard one of the cars of a moving train. After riding the train for a brief period, he attempted to jump from the moving train. His attempt to jump proved disastrous, however, and his legs were amputated as they fell beneath the wheels of the moving train. It is apparent from these facts that the harm which came to the young boy was not the result of his reliance upon the fence to prevent him or his ball from descending to the railroad tracks. The ball had been retrieved, and Scarborough had returned safely to street level. Only then did he make an affirmative decision—a decision having no relationship whatsoever to the existence of the fence or the hole in it—to return to the tracks and hop the freight. In doing so, he intentionally ignored the fence which had been erected by the City and willfully encountered the thrill and also the risks inherent in jumping on and off a moving train. The fence was not intended to protect Scarborough from such risks, and the evidence is clear that he did not rely upon it to do so. I would conclude, therefore, that liability against the City cannot properly be based on Section 323 of the Restatement (Second) of Torts.

It seems clear, moreover, that the City's failure to repair the fence was not the legal or proximate cause of Scarborough's injuries. As we have already observed, the basketball had been retrieved and returned to the street when Scarborough determined to return to the tracks and ride the passing train. The fence, even without a hole, was not intended to prevent and, indeed, could not have prevented Scarborough from realizing this desire to ride the train. The evidence was clear that access to the tracks existed at various points and in various ways if an adult or child wished to descend to the railroad tracks. In short, the fence at Thirteenth and McFerran Streets was not intended to prevent access to the railroad tracks. Even Scarborough conceded that he could and, in fact, had achieved access to the tracks on prior occasions for the purpose of boarding passing trains. Therefore, even assuming for purposes of argument that the City negligently maintained the chain link fence, its negligence was superseded by the voluntary and deliberate decision by Edward Scarborough, after he had returned safely with the loose ball, to return to the railroad tracks for the purpose of engaging in the sport and thrill of hopping a passing train. As a matter of law, under these circumstances, the City of Philadelphia cannot be held liable to the minor plaintiff for injuries sustained when he jumped from a moving train. The City was entitled to a judgment n.o.v., and the trial court's denial thereof was error.

I would reverse the judgment and remand for the entry of judgment in favor of the City of Philadelphia.[2]

2. Because of this conclusion, I find it unnecessary to decide the issues raised in the City's motion for new trial.