J-S77004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHEEN JACKSON | |
| Appellant | No. 1658 EDA 2013 |

Appeal from the Judgment Entered May 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005076-2011

BEFORE:  STABILE, JENKINS, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 17, 2015**

Appellant, Rasheen Jackson, appeals from the judgment of sentence imposed on May 15, 2013 in the Court of Common Pleas of Philadelphia County following his conviction for aggravated assault, 18 Pa.C.S.A. § 2702(a).  Appellant contends the trial court erred by delivering an instruction on accomplice liability in response to a question from the jury. We disagree and, therefore, affirm.

Appellant was charged with criminal attempt (murder - first degree), aggravated assault, and possessing instruments of crime[1] following events

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a) and 2502(a); 2702(a); and 907(a), respectively.

that occurred in the early morning hours of February 27, 2011. The trial court summarized the evidence presented at trial as follows:

The complainant, Sherman Hopkins, testified that at approximately 2:00 a.m. on February 27, 2011, he and his two sisters, Shaina Grantham and Shaina Hopkins, were driving home in a green Hyundai. Mr. Hopkins was sitting in the passenger seat while Ms. Grantham drove. Mr. Hopkins testified that at some point Ms. Grantham "cut off" a black car, leading to the exchange of hostile words between the occupants of the two vehicles, after which the black car drove away. Later they again encountered the same black car at the intersection of 52nd Street and Greenway Avenue. The argument between the occupants of the two vehicles continued.

Mr. Hopkins testified that [Appellant] exited the black car and began kicking the passenger side window of the Hyundai until the window broke. Mr. Hopkins then exited and began fighting with [Appellant]. A second man then exited the black car and joined the fight. Mr. Hopkins testified that he threw this other individual to the ground, and it was at this time that he first felt himself being stabbed in the wrist. The struggle continued, and when Mr. Hopkins saw that he was "soaked in blood" on his shirt, pants and shoes, he realized he'd been stabbed and fled on foot, eventually reaching the Gulf gas station at 52nd Street and Woodland Avenue.

At the gas station some bystanders called the police. Officers arrived and transported Mr. Hopkins to the University of Pennsylvania Hospital. Mr. Hopkins testified that he was taken into surgery and would be in and out of the hospital for two months. . . .

Philadelphia Police Officer Gary Jones testified that on February 27, 2011, he and a partner were on patrol in Southwest Philadelphia. At approximately 2:15 a.m. Officer Jones received a call about a reported stabbing and proceeded to the Gulf gas station at 52nd and Woodland. On arrival he found Mr. Hopkins leaning on a car, his shirt "covered with blood." Rather than wait for an ambulance, Officer Jones immediately drove Mr. Hopkins to the University of Pennsylvania Hospital himself.

- 2 -

Trial Court Opinion, 3/6/14, at 3-4 (references to Notes of Testimony omitted).

Officer Jones testified he was still at the hospital when he learned another stabbing victim had been admitted to the same hospital. *Id.* at 4. That individual was Appellant. Appellant told Officer Jones he was stabbed in a fight in South Philadelphia. *Id.*

Philadelphia Police Detective Daryl Pearson was assigned to investigate the Hopkins stabbing and, later, the stabbing of Appellant. In the course of his investigation into the Hopkins stabbing, the detective took a statement from Appellant who first stated he and his brother were in a fight with two strangers in an area of Philadelphia different from where Hopkins was stabbed. *Id.* at 5. Detective Pearson testified that Appellant later admitted being in the area of Woodland Avenue and being in a fight with an occupant of another car. Appellant acknowledged breaking the car's driver side window by kicking the door but denied stabbing anyone. *Id.*

During the course of its deliberations, the jury presented the following question to the trial court: "Does Mr. Jackson's participation in the physical altercation in which Mr. Hopkins was stabbed equate to aggravated assault even if Mr. Jackson did not actually stab the victim?" Notes of Testimony (N.T.), Trial, 3/7/13, at 7-8. The trial court entertained argument on the issue during which the Commonwealth requested that the trial court give an instruction on accomplice liability. Appellant's counsel responded:

> I would object to that. You gave them instructions, there was no request for accomplice liability instruction. And we had a charging conference about this and no request was made at that time. I think the simple answer to this question is if they find he was in [an] altercation and he's not the stabber but somebody else is, then he can't be convicted of aggravated assault or attempted murder.

*Id.* at 8. Appellant's counsel requested that the trial court simply answer the jury's question with a "no." The trial court rejected counsel's request as "misleading" and "not an accurate statement of the law." Appellant's counsel lodged an objection. *Id.* at 13.

The trial court delivered the standard accomplice liability instruction. *Id.* at 14-17. The jury returned to its deliberations but did not render a verdict before adjourning for the day. When deliberations resumed the following day, the jury asked a second time about accomplice liability, this time in terms of the attempted murder charge. Appellant's counsel objected to giving the accomplice liability instruction on the same grounds stated when the jury presented its question the previous day. The trial court repeated the accomplice liability instruction, this time with an example. N.T. Trial, 3/8/13, at 4-12. The jury later returned its verdict, finding Appellant guilty of aggravated assault but acquitting him on the remaining charges, including attempted murder. On May 15, 2013, the trial court sentenced Appellant to a term of 10 to 20 years' confinement in a state correctional institution.

Appellant filed a timely appeal from his judgment of sentence. Appointed appellate counsel filed a timely statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) raising two issues. In this appeal, Appellant asks this Court to consider only one of those two issues:

> A. Did the trial court err when it instructed the jury on accomplice liability, after the jury asked the trial court the following question: "Does Mr. Jackson's participation in the altercation in which Mr. Hopkins was stabbed equate to aggravated assault even if Mr. Jackson did not actually stab the victim?"

Appellant's Brief at 2.

Appellant's argument is two-pronged. He first argues the trial court should have rejected the Commonwealth's request for the accomplice liability instruction because any request for that instruction should have been "submitted within a reasonable time before the closing arguments" with copies furnished to the other parties at that time. Appellant's Brief at 10 (citing Pa.R.Crim.P. 647(A)).[2] Because the Commonwealth did not request

_____

[2] Pa.R.Crim.P. 647(A) provides:

> (A) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

an accomplice liability instruction at the charging conference, Appellant contends, it should not have been given. *Id.* He then argues the instruction was not warranted because it was not responsive to the jurors' question. *Id.* We do not agree on either front.

In *Commonwealth v. Hanford*, 937 A.2d 1094 (Pa. Super. 2007), this Court explained:

> Our standard of review for the trial court's instructions to a jury is well established. When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. Reversible error occurs only where there is an abuse of discretion or an inaccurate statement of the law.

*Id.* at 1097 (citations, internal quotations and brackets omitted).[3] Appellant does not challenge the instructions delivered before the jury began its deliberations. He challenges only the supplemental instruction given in response to jury's question during deliberations on March 7.

Appellant argues that the trial court erred in providing the supplemental instruction because the Commonwealth did not request an accomplice liability instruction during the charging conference or at any other time prior to closing arguments. This Court considered the "requirement" for requesting jury instructions prior to closing arguments in *Commonwealth v. Harper*, 660 A.2d 596 (Pa Super. 1995). In *Harper*,

---

[3] We remind counsel for Appellant of the requirement that appellate briefs include a statement of the scope and standard of review. Pa.R.A.P. 2111(a)(3).

which involved Pa.R.Crim.P. 1119(a), the predecessor to Rule 647(A), this Court recognized:

> In his brief, appellant argues that the prosecution ignored both the letter and the spirit of Pa.R.Crim.P. 1119(a), regarding requests for jury instructions, in failing to make a written request for an accomplice liability charge prior to closing statements. With respect to these allegations, the law is clear. First, Rule 1119 does not require written requests for jury instructions, it merely states a preference for such. Second, the trial court is not limited to instructing a jury on only those points requested by the parties prior to closing statements. Regardless of whether or when a request for a specific instruction is made by a party, the trial court must charge the jury appropriately, that is, in a manner supported by the evidence. Appellant's challenges to the timing and manner of the charge, therefore, are meritless.

*Id.* at 598 (citations omitted).

While Pa.R.Crim.P. 647(A) addresses requests for jury instructions made prior to closing arguments, Pa.R.Crim.P. 647(C) authorizes the trial court to provide additional instructions to the jury after the jury has retired to consider its verdict.[4] In **Commonwealth v. Davalos**, 779 A.2d 1190 (Pa. Super. 2001), this Court stated:

> The scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. **Commonwealth v. Akers**, 392 Pa. Super. 170, 572 A.2d 746, 755 (1990). There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the

_____

[4] Rule 647(C) provides, in pertinent part, that "[a]fter the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties. . . ." Pa.R.Crim.P. 647(C).

- 7 -

> duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion. ***Commonwealth v. Washington***, 274 Pa. Super. 560, 418 A.2d 548, 552 (1980).

***Id.*** at 1195.

In response to the question posed by the jury, the trial court properly delivered clarifying instructions as permitted by Rule 647(C). We find no abuse of discretion on the part of the trial court for doing so.

In the second prong of his argument, Appellant contends the supplemental instruction was improper because it was not responsive to the juror's question. Appellant believes the trial court should have answered the jury's question with a simple "no" rather than deliver an instruction on accomplice liability. We agree with the trial court's determination that a "no" answer would be both misleading and an inaccurate statement of the law. While the jurors did not specifically ask for an accomplice liability instruction, a fair reading of their question suggests that the concept with which the jury was struggling involved the concept of accomplice liability. Accordingly, we find no abuse of discretion for delivering the accomplice liability charge because it was, in fact, responsive to the question posed.[5]

---

[5] Further evidence that the charge was responsive to the question is found in the question asked during the course of deliberations on March 8, 2013. At that time, the jury asked, "Your honor, we the jury ask if we can infer that there was intent to murder Hopkins based on his wounds, but have no [proof] beyond a reasonable doubt that [Appellant] stabbed Mr. Hopkins. Can he be found guilty of attempted murder as an accomplice?" N.T.,
*(Footnote Continued Next Page)*

The trial court did not abuse its discretion in delivering the accomplice liability instruction as a supplemental charge in response to the jury's question. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

3/8/13, at 7. Although Appellant's counsel objected on the same grounds raised with respect to the March 7 question, he has not presented any argument to this Court challenging the trial court's decision to repeat the accomplice liability instruction on March 8.